## WILLIAM T. MARTIN VS. WILLIAM DIX, Tax Assessor, etc.

1. MUNICIPAL CORPORATIONS : *Power of the legislature to create, extend, or abolish.*
Municipal corporations are mere creatures of legislative will, to establish or abolish at the pleasure of that body in which the legislative power resides, as its conception of the interests of the state demands.  Their charters are altered or repealed, and their boundaries contracted or enlarged, at the will of the general assembly, either with or without the consent of the persons affected thereby.  In the absence of some specific constitutional limitation, the power of the legislative department in this regard is absolute, and uncontrollable by the courts.

2. SAME : *Power of taxation.  Private property taken without just compensation.*
That clause in the Constitution of the United States which provides that "private property shall not be taken without just compensation," is a limitation upon the power of the federal government alone, and does not apply to the several states.

3. SAME : SAME : *Constitution of Mississippi, art. 1, § 10.*
The constitution of Mississippi provides that " private property shall not be taken for public use except upon due compensation first having been made to the owner thereof, in a manner provided by law."  This provision has no reference to the taxing power of the state, but to the exercise of the right of eminent domain.  In the exercise of the taxing power the state cannot be said to take private property for public use, in the fair and common acceptation of the words.

4. SAME : SAME : *Extension of corporate limits.  Act of April 17, 1871.  Case in judgment.*
The act of the legislature of April 17, 1871, extended the corporate limits of the city of Natchez a half mile in all directions except that side of the city washed by the waters of the Mississippi river.  The extension of the boundaries embraced the lands of M., which were thereby subjected to corporation taxes.  The extension was unnecessary, and the city declining in population and business.  M.'s land is used by him for a residence, lots, orchard, garden, and as a cotton farm, and no part of it mapped or platted, or offered for sale; his residence is six hundred yards from any street, and one mile from any police station, engine-house or gas-lamp; that he is not benefited by the corporation, and pays $255 taxes thereto.  *Held,* that the mere extension of the city boundaries, and the consequent liability to municipal taxes thereby imposed upon the property of M., does not constitute a deprivation of his property " without due process of law," nor does it amount to the taking of "private property without just compensation," within the meaning of the constitution.  If injustice has been done, relief must be found at the ballot box.  It is not for the court to define the limits of legislative discretion, nor, in the absence of constitutional inhibitions, to declare laws void because they are morally wrong or practically unjust.

APPEAL from the Chancery Court of *Adams* County.

Hon. E. H. OSGOOD, Chancellor.

The facts in this case are very fully stated in the opinion of the court.

The following errors are assigned :

1. The court erred in sustaining the demurrer and dismissing the bill.

2. In sustaining the demurrer and dismissing the bill on rehearing.

*Martin & Lanier*, for appellant :

The facts bring the case within the jurisdiction of the court. Goulson *v.* Harris, 43 Miss., 752, and authorities cited ; McDonald *v.* Murphree, 35 Miss., 710.

Our own constitution, §§ 2, 10, gives to the citizen the same protection. Taxes are assessed and collected for the benefit of all, as a necessity. Cooley's Con. Lim., 479, 480, 481 ; McCulloch *v.* Maryland, 4 Wheat., 428 ; Potter's Dwarris on Stat., 402, 403.

Complainant derives no benefit from the extension ; on what can the city base its right to tax him ?

Recently in Missouri, Iowa, and Kentucky the supreme courts of those states have decided against the right of the legislature to subject to arbitrary taxation real estate lying beyond the reach of the municipal benefits of a city. 22 Mo., 385 ; Cooley's Con. Lim., 499. In cases of flagrant injustice the courts will interfere and control and limit the taxing power when it ceases to operate beneficially to the proprietor in a *municipal point of view.* 2 Dill. on Corp., 732, 733 ; Cooley's Con. Lim., 499, 500, 501, and note ; 9 B. Monroe, 320 ; 17 ib., 233 ; 2 Metcalf (Ky.), 553 ; 15 B. Monroe, 491 ; 2 Bush, 271 ; 7 ib., 37 ; 1 Neb., 16 ; 8 Bush, 607 ; 8 Iowa, 82 ; 17 ib., 404 ; 20 ib., 282 ; Dillon, in his work on Municipal Corporations, p. 734, § 634, vol. 2, sums up the result of the decisions, and adds to the authorities 11 Iowa, 433 ; 16 ib., 271 ; 12 ib., 113 ; 26 ib., 419 ; 22 ib., 214 ; 30 ib., 541. An unlimited power to make any and everything lawful which

the legislature might see fit to call taxation would be, when plainly stated, an unlimited power to plunder the citizens. 51 Penn. St., 9; 8 Iowa, 92. See, also, 10 Allen, 575; Cooley's Con. Lim., 487, and note; ib., 494; Sedgwick on Stat., 414. In any case the judge or justice, being free from doubt in his own mind and unfettered by any judicial decision properly bearing upon him, must follow his own sense of duty upon constitutional as well as other questions. Cooley's Con. Lim., 162; 3 Ohio (N. S.), 483; 6 ib., 480; 1 Kan., 116.

*Winchester & North* and *Potter & Green*, on the same side: *T. Otis Baker*, for appellee:

If the legislature had the constitutional power to pass the act of April 17th, 1871, extending the corporate limits, then the former charter and ordinances applied as well to the newly embraced parts of the corporation as to the old. Knowlton *v.* Supervisors, etc., 9 Wis., 410; Attorney General *v.* Winnebago, 11 Wis., 35; Weeks *v.* Milwaukee, 10 Wis., 242; O'Kane *v.* Treat, 25 Ill., 557; Philadelphia *v.* Wood, 39 Penn., 73; McComb *v.* Bell, 2 Minn., 295; Adams *v.* Somerville, 2 Head, 363; State *v.* Merchants' Insurance Co., 12 La. An., 802; Sacramento *v.* Crocker, 16 Cal., 119. See, also, St. Louis Gas Co. *v.* St. Louis, 46 Mo., 121; Trustees *v.* City of Erie, 31 Penn. St., 515.

The legislature possesses all legislative power not prohibited. Its power is limited only by its own discretion. Potter's Dwarris on Stat., 368, 369; Sill *v.* Corning, 15 N. Y. 303; People *v.* Supervisors, etc., 27 Barb., 593; People *v.* N. Y. C. R. R., 24 N. Y., 497, 504; Commonwealth *v.* Hartman, 17 Penn. St., 119; Kirby *v.* Shaw, 19 Penn. St., 260; Weisler *v.* Hade, ib., 477; 2 Park. Cr. R., 490, 533.

The clause of the U. S. Constitution refered to has no application to the states. Barrow *v.* City Baltimore, 7 Peters, 247; the provision in the constitution of Mississippi, that "private property shall not be taken for public use without just compensation," art. 2, § 10, is a limitation upon the exercise of the *right of eminent domain*, and relates to that subject alone.

Cooley's Con. Lim., 497, 498; Potter's Dwarris, 400 : People v. Mayor of Brooklyn, 4 N. Y., 422; Williams v. Mayor of Detroit, 2 Mich., 565; Scoville v. Cleveland, 1 Ohio (N. S.), 126; Northern Ind. R. R. Co. v. Connelly, 10 Ohio (N. S.), 165; Howell v. Buffalo, 37 N. Y., 270.

The legislature may create municipal corporations *at will, from its own view of the necessity, without consulting the parties interested.* Cooley's Con. Lim., 118; Dillon, Mun. Corp. (2d ed.), §§ 23, 30; Berlin v. Graham, 34 N. H., 266; People v. Wren, 4 Scam., 269; Mills v. Williams, 11 Ind., 558; State v. Curren, 7 Eng., 321; People v. Morris, 13 Wend., 325; Gorham v. Springfield, 21 Me., 58; North Yarmouth v. Skillings, 45 Me., 133–141; Jersey City v. Railroad Co., 20 N. J. Eq., 360.

The legislature may annex territory to a municipal corporation without the consent, and even against the remonstrance, of a majority of the persons residing in the corporation, or on the territory to be annexed. Dillon on Mun. Corp., § 126; Cooley's Con. Lim., 192, 193; Blanchard v. Bissell, 11 Ohio St., 96; Bowers v. Wood County, 8 Ohio St., 285; Chandler v. City of Boston, 112 Mass., 200; St. Louis v. Russell, 9 Mo., 507; St. Louis v. Allen, 13 Mo., 400; Smith v. McCarty, 56 Penn. St., 359; Wade v. Richmond, 18 Gratt., 583; Norris v. Mayor, 1 Swan, 164; 12 La. An., 515; 11 ib., 54; 12 Ill., 1, 8; 13 Ill., 27, 30; 21 ib., 451; 25 ib., 187; 3 Gratt., 247.

CHALMERS, J., delivered the opinion of the court.

The bill is filed to enjoin and restrain the collection of a municipal tax assessed against, and claimed to be due by, complainant to the city of Natchez. It alleges that complainant resides in the country, at a distance from the city of Natchez, and that his residence was there fixed with a view to the enjoyment of the pleasures of a country life, and to avoid the dust and noise, as well to escape the burdens of taxation incident to city life; that his residence and property is more than a quarter of a mile distant from the incorporated limits of the

city, as the same have been established and defined for a great number of years; but that, on 17th of April, 1871, the charter of the city was amended by act of the legislature, whereby the boundaries of the city were extended one-half mile in all directions save on that side of the city washed by the waters of the Mississippi river; that by this enlargement of the city limits the residence and lands of complainant were embraced therein.

It is charged that this change in the corporate limits was unnecessary and uncalled for by the wants or wishes of the inhabitants, either within or without the old limits, and was dictated, above all, by a corrupt desire to subject to city taxation the property situated in the country contiguous thereto. It is alleged that the city of Natchez has been steadily declining in population and business for the last fifteen years, with every prospect of a continuance in such decline; that there were, previous to the enlargement of its corporate area, very large bodies of land embraced therein which were wholly unoccupied by streets, houses, or squares, and these unoccupied portions are increasing rather than diminishing. It is represented that complainant's property is wholly used by him as a residence, with the usual lots, orchards, gardens, and yards properly appertaining to a country home, and that the portion not so occupied is a cotton farm, and that no part of it has ever been mapped off or platted by him into town lots, with a view to sale as such, nor does he contemplate such action; that his residence is six hundred yards distant from any street, and one mile distant from any police station, fire engine-house, or gas-lamp, so that he has not received, and in the nature of things cannot receive, any benefit from the municipal government save, perhaps, the right to vote in charter elections, which he freely disclaims and would gladly surrender. It is shown that the municipal taxes assessed against him are $225, and the prayer is that their collection be enjoined. There was a demurrer to the bill for the want of equity, which was sustained, and the bill dismissed.

Complainant's bill is based on the idea that, while it is com-
petent for the legislature to incorporate cities and towns, and
to fix and define their boundaries, such legislative action
must be confined to the *bona fide* exercise of the power; and
that it cannot, by an arbitrary and causeless or corrupt abuse
of the power, declare that to be a portion of a city or town
which in fact is agricultural land, wholly disconnected with the
city, and in no manner needful or useful to its government or
its occupation. It rests upon the assumption that such legis-
lation is unconstitutional, if not to the full extent of rendering
the extension of the city limits nugatory, at least in so far as
it seeks to authorize the imposition of municipal taxes on the
property improperly embraced. Such taxation is said to
infringe that clause of the Constitution of the United States,
which provides that " no person shall be deprived of life, lib-
erty, or property without due process of law, nor shall private
property be taken without just compensation." It is also said
to be obnoxious to the like provision in our own Bill of Rights,
and also to the 10th clause of said instrument, which provides
that " private property shall not be taken for public use except
upon due compensation first being made to the owner or own-
ers thereof, in a manner to be provided by law." So far as
the clause quoted from the Constitution of the United States is
concerned, it is well settled that it is a limitation upon the
power of the federal government alone, and does not apply
to the several states. Barrow *v.* Mayor of Baltimore, 7 Peters,
247.

The inhibition in our Bill of Rights against the deprivation
of property, except by due process of law, doubtless applies as
well to the legislative as to the judicial departments of the gov-
ernment, but in a much more restricted and wholly different
sense.

As regards judicial proceedings, and as applicable to private
controversies, it means that the citizen shall not be divested
of his property except after some legal inquiry, conducted
according to forms of procedure established by a general law,

applicable to a class of cases in which the particular case may be said to fall. Cooley's Con. Lim., 355, and notes. With regard to the legislative department, it certainly means that everything shall not be taken as a law merely because it has passed through the forms of enactment, and that it is, therefore, incompetent for the legislature, by acts of attainder, or bills of pains and penalties, or of confiscation, or in any other mode, to take one man's property and give it to another, or transfer it to the state.

It does mean, however, that the validity of a law is to be tested by any form of procedure other than those prescribed in the constitution for the enactment of legislation, but rather by the general principles of civil liberty and constitutional power, established by the organic law.

Due process of law, therefore, will in each particular case mean, as applicable to legislative acts, such exertion of the legislative will as is sanctioned by the settled maxims of our jurisprudence, and not specially prohibited by the constitution. Cooley's Con. Lim., ch. 11 ; Potter's Dwarris on Stat., *contra*, ch. 15. Whether this provision applies at all to questions of taxation, and if so, to what extent, is most ably and exhaustively discussed in the case of Griffin *v.* Mixon, 38 Miss., 424, both in the opinion of a majority of the court, and in the dissenting opinion of Mr. Justice HANDY. We must say that we think the views announced in the dissenting opinion better supported, both upon reason and authority.

However this may be, it is impossible to see how the mere annexation of complainant's property to the city limits can be said to violate the clause of the constitution under consideration.

Whether the mode of taxation, therefore, adopted by the municipal government would fall beneath the condemnation of the clause, could only be ascertained by a consideration of the machinery devised for its enforcement. There are no complaints nor allegations on this subject contained in the bill. We cannot hold that the mere extension of the city boundaries,

and the consequent liability to municipal taxation thereby imposed upon complainant's lands, constituted a deprivation of his property without due process of law.

Are these acts liable to the reproach of taking "private property for public use without due compensation?" This provision of our constitution is contained substantially in those ·of every state in the Union, and has been the subject of repeated adjudications. While the decisions are to some extent ·conflicting, we think the better view is that it has no reference to the taxing power of the state, but to the exercise of the right of eminent domain.

Both of these great fundamental powers spring from the sovereignty inherent in every independent government, but they are quite different in their attributes and mode of exer- ·cise. By virtue of its ultimate sovereignty over its own terri- ·tory, every independent nation may at pleasure cede away a portion of that territory to a foreign power. *A fortiori* it may appropriate it to its own use. This power of cession to ·a foreign country is prohibited to the states of our Union by the federal compact, but the right to appropriate its own terri- ·tory to public use remains intact, limited only by clauses in ·their several constitutions, similar to the one under discussion, providing that the private owner shall be compensated ·therefor.

In taking the property of the citizen for its own use, the ·state exercises what is known as the right of eminent domain.

It is evident, therefore, that the clause of the constitution under review applies to this power.

Does it apply also to the power of taxation? In imposing ·taxes, can the state be said to take the property of the citizen ·for public use? In one sense perhaps it may, but not, we ·think, in the fair and common acceptation of the words.

If taxation is the taking of private property for public use, and ·therefore, must necessarily be accompanied by compensation, ·this latter is received only in the protection which govern- ·ment gives to life and property, and to the increased value of

the latter by reason of that protection.   But it is held in this state that, under the clause of the constitution under consideration, the compensation must be in money, and nothing else will meet the requirements of the organic law.   N. O. & J. R. R. Co. *v.* Moye, 10 George, 347 ; Isom *v.* Miss. C. R. R. Co., 7 George, 300 ; Brown *v.* Beatty, 5 George, 227.

It is also held in the same cases that the compensation must be paid or tendered in advance, yet in most cases of taxation for public works the collection of the tax precedes the inauguration of the work.   It would seem, therefore, that, if this clause of the constitution applies to the exercise of the taxing power, the construction of it as settled in this state is constantly violated, and must, in the nature of things, continue to be perpetually violated in the future.   It is, however, expressly decided ( Carmack *v.* Williams, 5 Cushman, 209 ) that this clause does not apply to the taxing power.

It seems settled also we think, by what we regard as the weight of authority, in other states, that the requirements of compensation to the owner for property taken is not a limitation upon the exercise of that power.   Potter's Dwarris on Stat., 400, and cases cited ; Cooley's Con. Lim., 497, 498, and cases cited ; Cooley on Taxation, 430, and cases cited.

There are a series of cases in several of the states holding a different view from that here announced.   In Iowa, Kansas, Kentucky, and Nebraska there are quite a number of cases, strikingly analogous to the one at bar, in which the relief here prayed for was granted.   They are much pressed on our attention by counsel, and it is quite evident that they afforded the ground-work for this appeal for judicial interposition against legislative injustice.

These cases hold that while the enlargement of municipal boundaries, and the consequent imposition of municipal taxes upon the property of unwilling citizens, is not ordinarily such a taking of private property for public use as violates the constitution, yet it may so operate if the extension is unreasonable and embraces territory not needed for building or

population, and which is held by the owners, not for sale or use as city lots, but purely for agricultural or horticultural purposes.   15 B. Monroe, 491 ; 17 ib., 37 ; 2 Metc., 553 ; 1 Neb., 16.; 8 Iowa, 82 ; 13 ib., 86 ; 16 ib., 272 ; 20 ib., 282.

We have given to these decisions the consideration that the importance of the principles, and the high character of the tribunals announcing them, demand at our hands, but, however strongly impressed with their natural justice and equity, we cannot consent to follow them as affording ground for judicial annulment of legislative action.

Municipal corporations are mere creatures of legislative will, established or abolished at the pleasure of that body in which the legislative power resides, as its conception of the interests of the state demands.

In their creation or abolishment the legislature is under no legal compulsion to consult the wishes of the inhabitants of the municipality, however much wise statesmanship and natural justice may dictate such a course.   Their charters are altered or repealed, and their boundaries contracted or enlarged, at the will of the general assembly, either with or without the consent of the persons affected thereby, as the legislature may see fit.   In the absence of some specific constitutional limitations the power of the legislative department in this regard is absolute, and uncontrollable by the courts.   Cooley's Con. Lim., 118 ; Dillon on Mun. Corp., §§ 23–30, and cases there cited.

Most of the cases relied on by appellant recognize the force of these views, which are not, indeed, anywhere seriously disputed, but they undertake to draw a distinction between the power of the legislature to create municipal corporations, and the right to delegate to these bodies the power of taxation.   It is said that the courts may not restrict the one, but may control the other.   Hence it is asserted that, while recognizing the power of the general assembly to prescribe such boundaries as it chooses for cities and towns, the courts will limit the exercise of the taxing power of these local governments within

such boundaries, inside the lines of incorporation, as to exclude from its operation all property not benefited by the municipal government. Thus it is said that the courts will examine city maps and surveys, and hear proof as to the location and uses of the particular property in question, and if it appears that the proposed extension of the corporate limits embraces lands exclusively used for agricultural, horticultural, or mining purposes the imposition of municipal taxes thereon will be enjoined.

These decisions have all been made upon cases arising under amendments to charters and extensions of limits.

No distinction is perceived by us between an old and a new charter in this respect.

Complainant asserts in his bill in this case that there are, within the limits of the old incorporation of the city of Natchez, several hundred acres of land wholly unnecessary to, and unused for, any urban purpose whatever, neither mapped off into lots, nor intersected by streets. May the owners of this property enjoin the imposition of any municipal taxes thereon? If not, what different principle authorizes complainant to do so? But if they may, are the courts to enter into perpetual inquiries as to what benefit is received by each and every inhabitant of an incorporated town from the local government thereof?

No principle could be more dangerous, and, in judicial inquiry, more uncertain and unsatisfactory. The advantages derived from an urban government are frequently difficult to point out, and may, indeed, be wholly illusory.

It is, for instance, quite fashionable in this state to incorporate, under high-sounding names, every collection of a half-dozen houses erected at the intersection of country cross-roads. The limits of these fictitious towns and cities frequently embrace quite an extensive area of land. No advantage visible to the eye is thereby conferred upon the property or its owners. Neither streets, nor side-walks, nor gas-lights, nor water-works greet the traveler or minister to the comfort of the inhabitants. Shall the courts, therefore, declare that the legislature has violated the organic law in their creation,

or enter upon an investigation as to the amount of benefit received by each particular piece of property embraced therein?

Admitting, as the decisions relied on by complainant do, the power of the legislative assembly to organize these inferior local governments, and to delegate to them the power of taxation for municipal purposes, we are unable to perceive any sound principle which can authorize the courts to sit in judgment upon this legislative will, and to declare what property ought, and what ought not, to have been included within the corporate boundaries, or to say what property so embraced shall, and what shall not, bear the burdens of the local government. The assumption of such power by the courts we regard as alike unsound in theory and dangerous in practice.

Mr. Cooley, alluding to this class of decisions, after stating the conclusions reached in them, remarks that "it would seem as if there must be great practical difficulties, if not some of principle, in making this disposition of such a case." Cooley's Con. Lim., 501, note.

While the practical difficulties alluded to by Judge Cooley seem to us so grave as to be, in effect, insurmountable, we will not say that a case may not arise which would call for judicial interposition—as, for instance, if the limits of a town or village were so extended as to embrace an entire county, or a circumference of ten miles. Without undertaking to say what would be our decision in such a case, we prefer to confine ourselves to the case in hand, and to declare that we cannot undertake to enjoin the legislative will in this case, because it has seen fit to extend the limits of the city of Natchez six hundred yards further than seems to have been demanded by the circumstances of the city, or by the wishes of the inhabitants within or without its original boundaries. The relief for the injustice thereby done, if any has been done, must be found at the ballot box—operating on the legislature—and not through the courts. It is not for us to define the limits of legislative discretion, nor, in the absence of constitutional inhibition, to

declare laws void, because in our opinion they are morally wrong or practically unjust.   Cooley's Con. Lim., 168, 172, 182; Potter's Dwarris, 368, 369.

Let the decree dismissing the bill be affirmed.