Mendenhall v. Burton.

R. G. MENDENHALL v. A. W. BURTON.

1. TOWN, *Declared Incorporated.* The probate court was authorized under §1, chapter 108, General Statutes of 1868, to declare a town then existing to be incorporated as a village, designating the metes and bounds thereof.

2. CITY — *Corporate Character — No Collateral Question.* The corporate character of a city cannot be questioned collaterally by a private citizen, when it has been a *de facto* city for more than fifteen years, and a law was in force under which it might have been legally incorporated, and it was attempted to have been incorporated, under the provisions of such law.

3. UNPLATTED LAND, *Within City Limits — City Taxation.* A body of land containing 13.34 acres, wholly within the limits of a city, although never divided into blocks, lots, streets, alleys, etc., is subject to city taxation, although a part of it is used for agricultural purposes, when the owner resides thereon and it abuts upon the main street of the city.

*Error from Linn District Court.*

ON the 7th day of October, 1869, a plat of the town of La Cygne was duly filed in the office of the register of deeds of Linn county. The town thus platted contained about 150 acres. On the 14th of January following, the probate court of said county incorporated the original town of La Cygne and other territory adjacent thereto as the village of La Cygne. This village became a city by the provisions of §1, chapter 60, Laws of 1871, which made all cities, towns and villages theretofore organized, containing not more than 2,000 inhabitants, cities of the third class. The village thus incorporated contained 640 acres of land, including the 150 acres of the town plat. That tract only was laid off into avenues, streets, alleys, lanes, commons, etc., for public use; the remainder of the 640 acres consisted of arable prairie and timber land. The plaintiff owns 13.34 acres situated within the 640 acres above described, but outside the 150 acres; no part of his land has ever been platted. It is now occupied by the plaintiff as a homestead. There is a strip of land lying between the original town-site of 150 acres and this tract, 480 feet

wide at its narrowest part; this also has never been platted. On the north of the plaintiff's land, and adjoining it, there has since been an addition to the city of La Cygne, called Foote & Beach's addition; this has been formally dedicated. This land of plaintiff's abutted upon the principal street of the city, which extends through the original town of La Cygne, the undedicated tract, and Foote & Beach's addition; there was a sidewalk built alongside the property of plaintiff, and a fence erected of wood and iron. F. H. Davis, who was one of the owners of the village-site incorporated by the probate court in 1870, for a long time owned and occupied this land as a homestead. He was one of the original petitioners for laying out the 640 acres for the village of La Cygne; repeatedly held offices under the city government, and had paid taxes on his land for a number of years. His grantee, who was the grantor of the plaintiff, also paid the taxes for a number of years. This plaintiff, tendering the full amount of all other taxes upon the land except those levied for city purposes, refused to pay them. This action was brought to enjoin the treasurer from proceeding to collect the city taxes upon this land. Judgment for defendant *Burton*, at the July term, 1887. The plaintiff *Mendenhall* brings the case here.

*James D. Snoddy*, for plaintiff in error.

*Selwyn Douglas*, and *Stephen H. Allen*, for defendant in error.

Opinion by Holt, C.: The plaintiff in error raises two questions for our determination: First, had the probate court any authority to incorporate the village of La Cygne? Second, can a city assess and collect taxes on farming land within its limits, when such land has never been platted or divided into streets, alleys, etc.? The defendant in error, while contending that both these questions should be determined against the plaintiff's claim, further argues that the power of the probate court to incorporate the village of La Cygne in January, 1870, cannot be inquired into on a question of the legality of the

taxes levied on plaintiff's land; that the only way that the validity of the incorporation of the village can be questioned is by the state, through its proper officers, in a direct proceeding. The power given the probate court to incorporate towns and villages is found in §1, chapter 108, General Statutes of 1868, which provides:

"Whenever a majority of the inhabitants of any town or village within this state shall present a petition to the probate court of the county, setting forth the metes and bounds of their village and commons, and praying that they may be incorporated, and a police established for their local government, and for the preservation and regulation of any commons appertaining to such town or village, and the court shall be satisfied that a majority of the taxable inhabitants of such town or village have signed such petition, and that the prayer of the petitioners is reasonable, the probate court may declare such town or village incorporated, designating, in such order, the metes and bounds thereof."

The plaintiff contends that the word "town" has a recognized meaning as used in this statute; *i. e.*, a tract of land divided into lots, blocks, streets, alleys, squares, etc., upon which habitations and business houses have been erected, and which is inhabited by a community living near each other, requiring local government and control, and the land being so occupied by dwelling-houses and other buildings that it makes farming thereon impracticable; that it must, in fine, be an actual town. The defendant contends that more land might be embraced within the limits of a village to be incorporated than was actually occupied by dwellings and business houses; that it might reasonably be expected in a new country that there would be an increase in the population and a growth of the town, and that buildings would be extended beyond the town thus occupied; and further says that the law did not contemplate necessarily that the original metes and bounds of the town should be the metes and bounds of the village or town to be incorporated by the probate court, as the law itself gave to the probate court the authority of designating in its order of incorporation the metes and bounds of the proposed village.

The view we take of this case will not require a discussion of this question. The plaintiff contends that the city tax upon his property is illegal, for the reason that the city itself was not regularly incorporated. We think that the corporate character of a city cannot be questioned by a private citizen in an action to prevent the city from collecting its taxes, when it is acting under color of law. When La Cygne was incorporated, a law was in force under which it might have been organized. It has ever since been and now is a city *de facto*, claiming to exist by virtue of its incorporation under that law. Whether it was regularly incorporated might be determined in an action brought by the state through the proper officers, but cannot be inquired into collaterally by private citizens. We think this rule is well established. (*Krutz v. Paola Town Co.*, 20 Kas. 397; *St. Louis v. Shields*, 62 Mo. 247; *Tisdale v. Town of Minonk*, 46 Ill. 9; *Geneva v. Cole*, 61 id. 397; Cooley, Const. Lim. 254; Dill. Mun. Corp., § 43; *Blanchard v. Bissell*, 11 Ohio St. 96.)

2. City—corporate character —no collateral question.

The plaintiff says, however, that it is not a mere irregularity that he complains of, but that the probate court acted in excess of its powers and without authority of law, and to that extent its acts were void. The probate court had authority under section 1, supra, to declare the town of La Cygne incorporated as a village. Under our constitution, (art. 12, § 1,) it could not have been incorporated by a special act of the legislature. Instead of attempting to incorporate villages, towns and cities by special enactments, the legislature had by a general law fully defined what their corporate powers should be whenever one should be declared incorporated by the probate court. The court could not have added to or diminished the powers, privileges and immunities granted, or made the least change in the law governing villages; it did not attempt to create or define any corporate powers whatever. It simply determined and declared that a majority of the taxable inhabitants of the town had signed a petition praying that it should be incorporated, that the prayer was reasonable, and fixed the metes and bounds

1. Probate court; power to declare town incorporated.

of the proposed village. This is no unusual exercise of authority in Kansas by the courts. (Comp. Laws 1885, ch. 19*a*, § 2.) Nor does Kansas stand alone in this method of incorporating cities. (*The State v. Goodwin,* 69 Tex. 55; *Hill v. City of Kahoka,* 35 Fed. Rep. 32; *Mayor etc. v. Shelton,* 1 Head, 24; *Woods v. Henry,* 55 Mo. 560. See also as to authority conferred upon probate courts and probate judges: *Kirkpatrick v. The State,* 5 Kas. 673; *In re Johnson,* 12 id. 102; *Intoxicating-Liquor Cases,* 25 id. 760. Contra: *Shumway v. Bennett,* 29 Mich. 451; *Burgoyne v. Supervisor,* 5 Cal. 9; *Dickey v. Hurlburt,* 5 id. 343.) Where no protest is made against the manner of the incorporation of a city until more than fifteen years have passed, it will be received as strong proof that the public generally had acquiesced in the action of the probate court. Mere irregularities, which might have been investigated within a short time after the village was incorporated, will not now be inquired into. (*Sherry v. Gilmore,* 58 Wis. 324; *Worley v. Harris,* 82 Ind. 493.)

Davis, the former owner of the land now sought to be relieved from taxation, was one of the original petitioners for the incorporation of the village, and for a long time paid taxes upon this property; and although there may be nothing in the payment of taxes that would estop this plaintiff from the claim that he makes, yet it shows a long acquiescence of his grantors in the boundaries of the village. The fact that Davis signed the petition for the incorporation of the village is more of the nature of an estoppel; it would probably be to him, and might be to the plaintiff.

The remaining question is, can a city assess and collect taxes upon farming land within its corporate limits, when such land has never been platted or divided into streets, alleys, etc.? The only provision in chapter 19*a*, Laws of 1885, exempting any property within the limits of a city of the third class from taxation is § 93, which provides:

"All lands, houses, moneys, debts due the city, and property and assets of every description belonging to any city or municipal corporation under this act, shall be exempt from taxation."

This is in line with the exemptions named in §1, article 11, of the constitution. That section also provides for a uniform and equal rate of assessment and taxation; it applies to a city of the third class, for the reason that the city constitutes a taxing district, and all property not exempt must bear its equal burden of taxation; under that provision alone we would be willing to rest the decision of this phase of the case. (*Weeks v. City of Milwaukee*, 10 Wis. 242; *Cary v. City of Pekin*, 88 Ill. 154; Desty on Taxation, 1100; Cooley, Const. Lim., 5th ed., 622. See also *Powell v. City of Parkersburg*, 28 W. Va. 698.)

This tract, now owned by plaintiff, is wholly within the city, and on its main street, lying between the old town of La Cygne, incorporated in 1869, and Foote & Beach's addition, both of which are platted, and meet all the requirements of a city of the third class; there is a sidewalk on that side of the tract abutting the main street; the tract itself contains only 13.34 acres; the plaintiff is a physician; his residence is a comfortable one; a good part of this land is orchard and grounds surrounding his residence, although a part of it is in corn, and used distinctively as farming land. The authorities relating to the taxation of agricultural lands in cities for municipal purposes, are not uniform. The courts of Iowa hold that under certain circumstances they are exempt from municipal taxation, and the Kentucky and Pennsylvania courts follow the same rule, though somewhat modified. We will briefly state the facts of the more important cases decided by the Iowa supreme court. The first time the subject was presented to that tribunal was in *Moreford v. Unger*, 8 Iowa, 82, when a body of land containing 103 acres, about one mile from any laid-out blocks, though within the limits of the city, was held to be exempt from taxation. The facts in *Langworthy v. City of Dubuque*, 13 id. 86, show that a large tract — several thousand acres — was added to the city for the sole purpose of increasing the revenue of the city; the land was used exclusively for mining, horticultural, grazing, and agricultural purposes; the court held that the land was not subject to city taxation.

In *Fulton v. City of Davenport*, 17 id. 404, sixteen acres were exempted from city taxation; no street having been opened, and no road touching it anywhere. Also in *Buell v. Ball*, 20 id. 282, 230 acres were held exempt from city taxes, it being about one-quarter to three-quarters of a mile from any city lots. It was decided in the case of *O'Hare v. City of Dubuque*, 22 id. 144, that forty-seven and one-half acres of mining and agricultural land were subject to city taxation, for the reason that it was on a street; but in the same case nineteen and one-half acres were held not taxable, not being on any principal street and were hardly accessible, certainly not by any street leading to the business part of the city. In 34 id. 199, several cases are reported together, under the head of *Kaufman v. Durant.* One tract of 80 acres and another of 50, used for agricultural purposes, were held to be taxable on the theory that they were made valuable, and might be divided and sold at an advantage for city lots; one body of 16 acres and another of 17 were also held to be subject to city taxes, because they were each occupied by the owners as their residences, the land being in orchards, lawns, etc. In *Brooks v. Polk County*, 52 id. 460, 120 acres of undedicated land were held to be taxable for city purposes, although occupied as a pasture, be-

3. Unplatted land, within city limits— city taxation.

cause the land had been enhanced in value by its location in the city, and could be sold for city lots at an advanced price because of the street and other city improvements near them. Even if we take the law as established in Iowa as our guide, this tract is liable to taxation in the city of La Cygne.

Where land is added to a city solely for the purpose of lessening the taxes of the city proper or increasing its revenue, it has been held in some of the states that taxes levied upon such land may be enjoined; but that rule would not apply to the facts in this case. On the other hand, it has been generally held in this country that cities have full power given them to impose taxes on agricultural and rural land within their boundaries. (*Weeks v. City of Milwaukee*, supra; *Cary v. City of Pekin*, supra; *Arbegust v. City of Louisville*, 2 Bush, 271;

*Hewitt's Appeal,* 88 Pa. St. 55; *Kelly v. City of Pittsburg,* 85 Pa. St. 170; *Martin v. Dix,* 52 Miss. 53; *Hill v. City of Kahoka,* supra.)

We believe the judgment of the court was correct, and recommend that it be affirmed.

By the Court: It is so ordered.

All the Justices concurring.