MARCUS HURLA *et al.* v. THE CITY OF KANSAS CITY *et al.*

1. CITY—*Power to Extend Boundaries.* A city of the first class has power to extend and enlarge its boundaries so as to include within it a continuous body of land lying contiguous to the prior limits of said city, when the ordinance providing for such extension is approved by the district court of the county within which said city is situate.

2. ———— *Extension of Limits.* A city of the first class has the power to enlarge or extend its limits so as to include several tracts of land, some of which adjoin the city, and others adjoining those that do adjoin the city, so as to form one continuous body, but the annexation ordinance must be approved by the district court of the county in the manner and under the conditions and requirements of the statute.

3. UNPLATTED LAND, *Subject to City Tax.* A tract of land wholly within the limits of a city of the first class, although never divided into blocks, lots, streets, and alleys, and used for agricultural and horticultural purposes, is subject to be taxed for ordinary city revenues. (The case of *Mendenhall v. Burton*, 42 Kas. 570, cited and followed.)

*Error from Wyandotte District Court.*

THE material facts appear in the opinion. Judgment for the defendant *City* and the county treasurer, at the December

term, 1890. The plaintiff *Hurla* and another bring the case to this court.

*Charles C. Dail, L. F. Bird,* and *Samuel S. Marsh,* for plaintiffs in error.

*Winfield Freeman, A. H. Cobb,* and *L. C. True,* for defendants in error.

Opinion by SIMPSON, C.: The plaintiffs in error commenced an action in the district court of Wyandotte county to set aside certain proceedings theretofore had, by which it was attempted to make their land, consisting of 30 acres devoted to agriculture and horticulture, a part of the city of Kansas City, by an extension of the limits of said city; and also commenced an action against the county treasurer of said county to enjoin the levy and collection of the taxes of 1890 on said land. The petitions specifically alleged that, on the 30th day of December, 1887, the city of Kansas City attempted, by ordinance duly published, to extend its boundaries so that the same should include the territory of the original cities of Kansas City, Armourdale, and Wyandotte, together with all the additions thereto, and all of the territory embraced in the original consolidated city of Kansas City, Kas., and all the territory within certain boundary lines fully described in said ordinance; that said ordinance was attempted to be passed on the 30th day of December, 1887; was approved on the 4th day of January, 1888, and was duly published in the *Kansas Pioneer,* the official paper of said city, and designated in said ordinance, within 20 days after its passage; that, after the publication of said ordinance, the mayor of said city, at the first regular term of the district court of Wyandotte county, Kansas, commenced after said 20 days, presented to the court a copy of said ordinance, together with the affidavit showing the proper publication thereof, which were filed with the clerk of said court; and thereupon said court did determine that said publication had been made as by law required, and by its judgment approved, but modified, said ordinance, first hearing all objections, if

any, and proofs, if any, offered by the city or persons affected
by said ordinance; and the limits or area of the said city were
attempted to be enlarged or extended, as designated in said
ordinance and modified by court, as of the date of the approval
or modification, to wit, on the —— day of ——, 1888; and
the limits of said city were attempted to be extended as in said
judgment specified, which limits as so modified embraced the
said land of plaintiffs; and that the said district court made a
record of its finding and determination in the premises. And
plaintiffs further alleged that, at the time of the passage of
the said pretended ordinance, and at the time of the said pro-
ceedings in said district court, the said property of plaintiffs
was bounded and completely surrounded by unplatted terri-
tory, and by territory which did not at said time adjoin to the
city limits of said defendant city; that it was not subdivided
into lots, blocks, streets, and alleys; that the land at said time
was used exclusively for horticultural and agricultural pur-
poses, and was surrounded completely and entirely by land of
similar kind, and used in the same manner for horticultural
and agricultural purposes; that no street of said defendant
city was opened to it or touched it anywhere, nor was any
street of said city open to or touching upon the land sur-
rounding said property of plaintiffs; that the plaintiffs' land
was not accessible by any street leading to the business part
of said city, nor was the land surrounding the land of said
plaintiffs as aforesaid accessible by any street leading to the
business part of said city; that by reason of the premises, the
said defendant city had no power or authority to pass any or-
dinance including the land of plaintiffs within the corporate
limits of said city, nor did said district court have any power
or authority, in passing upon said ordinance, to include the
land of plaintiffs within the corporate limits of said city, and
said ordinance, and the said judgment of said district court
thereon, were and are each thereof absolutely null and void,
and of no effect whatever; that neither of the plaintiffs had
ever done, or suffered to be done on their behalf, anything by
which they had ratified or confirmed in law or equity the said

void proceedings of said city and of said district court. Said plaintiffs further alleged that their said land was attempted to be assessed by the authorities of said defendant city at the sum of $13,700, and taxes were levied thereon for the year 1890 in the sum of $730, which taxes were duly extended upon the tax-rolls, and that the said defendant county treasurer threatens to sell the property of plaintiffs therefor; that the assessed valuation of said property, before said attempted proceedings were had by which it was pretended to be incorporated into said defendant city, was the sum of $2,500, and the taxes thereon amounted to $125; that their land is of no greater value at this time than it was at said time; that the said sum of $125 would be a just amount of taxes upon the said land of plaintiffs for the year 1890, and that the plaintiffs tendered said sum of $125 to the county treasurer, which was refused, and they tendered said sum in court.

To these petitions the defendant city filed demurrers, and upon the hearing of these demurrers it was agreed that the petitions should be amended by incorporating a statement therein, as follows:

"All land brought into said city under said proceedings — taken in its entirety — composed a continuous body of land lying contiguous to the prior limits of said city, but considering the portions or tracts owned by different parties as separate tracts, they did not all adjoin the city, and the land of the plaintiffs, so considered separately, did not so adjoin the city."

These demurrers were sustained by the district court, and the plaintiffs in error bring the case here for review. They claim that the statute did not authorize land situated as theirs is to be brought within the city limits; that the statute is unconstitutional and void as an attempted delegation of legislative power; that, if their land is property within the city limits, it must be taxed as agricultural land, and not as city property.

The act of the legislature first authorizes "territory adjoining the city limits that has been subdivided into lots, blocks,

streets and alleys to be added to the city with the approval of the city council and mayor." It then provides "that no un-platted territory of over five acres shall be taken into said city against the protest of the owner thereof, unless the same is circumscribed by platted territory that is taken into the city." It then provides that —

"Any city of the first class may enlarge or extend its limits or area by an ordinance specifying with accuracy the new line or lines to which it is proposed to enlarge or extend such limits or area. Within 20 days after the passage of such ordinance, the same shall be published in the city official paper, published in said city, to be designated in said ordinance. When said publication shall have been made, the mayor of said city, at the first regular term of the district court of the county in which said city is situated, commencing after said 20 days, shall present to said court a copy of said ordinance, duly certified by the clerk of said city under its seal, and also therewith an affidavit or affidavits showing the publication of said ordinance as hereinbefore provided, which said certified copy of said ordinance and said affidavits shall be filed with the clerk of said court. Thereupon said court shall determine whether said publication has been made as herein required, and shall then consider said ordinance, and by its judgment either approve, disapprove or modify the same, first hearing all objections, if any, and proofs, if any, offered by said city or persons affected by said ordinance. Should said ordinance be approved or modified by said court, then the limits or area of said city shall be enlarged or extended as therein designated, from the date of such approval or modification; but should it be approved entirely, or modified and approved, the judgment of said court shall stand, and the limits of such city shall be extended as is in said judgment specified, and the determination of the matter thus submitted to said court shall be final, and all courts of the state shall take judicial notice of the limits or area of such city, as thus enlarged or extended, and of all the steps in the proceedings leading thereto. The district court shall make a record of its finding and determination in the premises, which shall be conclusive evidence of the facts so found and determined; and after the disapproval or modification of one ordinance, another or others may be passed and acted on." (First-Class-City Act, § 8.)

The land in question is about 30 acres, used for horticult-

ural and agricultural purposes, and is entirely surrounded by
lands of like character. It does not adjoin the city; it is not
subdivided into lots, blocks, streets, and alleys; nor is it sur-
rounded or circumscribed by platted lands; but it is one of
several tracts that, taken in their entirety, compose a continu-
ous body of land lying contiguous to the prior limits of the
city, some of which tracts do adjoin the city, and this tract
does adjoin some that adjoin the city limits.

I. The controlling question in this case therefore is: Can
the city limits be extended under the section of the law of
1887, above quoted, so as to include a tract of land that is
part and parcel of a large, compact and contiguous body that
does adjoin the prior city limits, although this particular piece
does not so adjoin the city limits? This question we answer
in the affirmative, because of these words contained in the
section: "Any city of the first class may enlarge or extend its
limits or area by an ordinance specifying with accuracy the
new line or lines to which it is proposed to enlarge or extend
such limits or area." We think this expressly authorizes the
city council to take into the limits of the city such land as
adjoins the city, and such other land as adjoins land that ad-
joins the city, so as to make a continuous and compact body,
as may be approved of by the district court as provided in
the other provisions of the section. In other words, we think
the proper construction to be given to the act of 1887 is this:
First, the mayor and council have power to embrace within
the limits of the city all land that has been subdivided into
lots, blocks, streets, and alleys, without reference to the extent
of the land so divided, if such platted land adjoins the city;
this part of the section being framed on the theory that by
so platting the land the proprietor himself establishes its
character as city property, and assents to its absorption by the
city. Second, the mayor and council have power to extend
the limits of the city so as to embrace tracts of unplatted land
not exceeding five acres, and exceeding five acres when the
owner does not protest against such absorption. When the
unplatted land is circumscribed by platted land that is taken

into the city, the unplatted land can be taken in without regard to its extent. Third, any city of the first class can enlarge or extend its limits or area so as to embrace a continuous body of land lying contiguous to the prior limits of the city, composed of different tracts, but this extension must be approved by the judgment of the district court had in the manner prescribed by the law of 1887. If the land sought to be incorporated into the city was detached, so as not only not to join the city, or not to join land adjoining the city, we would have grave doubts about the power to extend the city limits so as to embrace a detached tract. That is, we doubt, under the power delegated in this section, if the city council is authorized to leave out or disregard small tracts adjoining the city limits, and pass them over and attempt to take within the city a detached tract not adjoining the city and entirely surrounded by tracts that do or do not adjoin the city limits; but as we understand the amendment to these petitions, descriptive of the location and surroundings of the land of the plaintiffs in error, we think it could, by proper proceedings in conformity to the provisions of the act of 1887, be brought within the city limits. This being so, the district court acquired jurisdiction, and had the power to hear and determine the questions presented by the ordinance, and, having jurisdiction, the plaintiffs in error are bound by the result. As we understand the contention of the counsel for the plaintiffs in error, they do not attack the regularity of the proceedings either before the council or the district court. All they claim in this respect is, that as the statute does not authorize the city to take the land of the plaintiffs in error into the city by an extension of its limits, the council of the city had no power to pass the ordinance, and the district court had no power to approve it; but as we hold that they have the power, and the district court having jurisdiction, the ordinance is valid for this reason.

II. Their next contention is, that the part of the act of 1887 that confers upon the district court of the proper county the power to approve, disapprove or modify such an ordinance

is unconstitutional, for the reason that it is a delegation of a purely legislative power. We had occasion to consider, discuss and determine practically the same question in the case of *Callen v. Junction City,* 43 Kas. 629. That case involved the constitutionality of § 1 of chapter 69 of the Laws of 1886. A comparison of the act of 1886 with that of 1887 will demonstrate that there is no substantial difference between them so far as the delegation of power is concerned. In one, it is to the district judge; in the other, it is to the district court. In the one case, the action of the district judge precedes that of the council; in the other, the action of the district court reviews that of the council; but in both there must be concurrent action to legalize the ordinance. It must be evident that if the delegation of power to the district judge under the act of 1886 can stand, that to the district court under the act of 1887 must be sustained. So that the conclusion is, that the act of 1887 is constitutional and valid against the objection now urged against it.

III. This leaves the question of the legality of the taxes to be passed upon. This question was considered by this court in the case of *Mendenhall v. Burton,* 42 Kas. 570, and the cases now cited by counsel for plaintiffs in error were then commented upon. In addition to what was said in that case, it appears to us that when it is determined that the land of the plaintiffs in error is a part of the city of Kansas City, there must exist some extraordinary condition to exempt it from the payment of the ordinary city taxation. If the assessment was too high, resort could have been had to the board of equalization, and possibly other remedies might have been used to have equalized its assessment. The rule is that all property situate within the city must bear its proper proportion of taxes, and must be assessed as city property. We regard the judicial determination of the district court of Wyandotte county, making this land a part of the city of Kansas City, as permanently fixing it as city property, and as such it must be assessed and taxed. It would breed unwarranted confusion with our assessments, and produce end-

less strife in our taxation, to permit any body of land that has been declared a part of an incorporated city to be taxed as farming land, the same as if it was not embraced within the city limits. Under our system of the extension of the limits of a city of the first class, all questions of this character are considered and passed upon by the district court when it approves an annexation ordinance. The character of the land is fixed as city property, and its assessment and taxation as such arbitrarily follows. We think it was properly assessed and taxed as city property. These conclusions compel us to recommend that the judgment of the district court sustaining demurrers to the petitions be affirmed.

By the Court: It is so ordered.

All the Justices concurring.