Ray v. Miller.

---

ROBERT P. RAY. V. CHARLES A. MILLER *et al.*

No. 15,846.   (98 Pac. 239.)

SYLLABUS BY THE COURT.

OFFICE AND OFFICERS—*Appointment*—*Veteran's Preference Law.* Charges of fraud, bad faith and disregard of law in denying an application for appointment to an office under the veteran's preference law must be proved by evidence of facts which are inconsistent with official probity. The inquiry starts with the presumption that public officers do their duty, that they act fairly, from good motives, and with the purpose and intention of obeying the law. Suspicion, surmise, insinuation and innuendo are not enough to overthrow this presumption.

Original proceeding in *quo warranto.* Opinion filed November 7, 1908. Writ denied.

*R. A. Campbell,* for plaintiff; *L. H. Greenwood,* of counsel.

*George E. McMahon,* and *Fred Washbon,* for defendants.

The opinion of the court was delivered by

BURCH, J.: The question in this case is one of fact. Was an application for appointment to office under the veteran's preference law rejected in bad faith?

The office in question is that of county assessor of Harper county, under the tax law recently enacted. By that law it was hoped to eradicate the chief evils and abuses which had brought discredit upon the former system of assessing property for taxation. To carry out the beneficent purposes of the law much depends upon the county assessor, and competency for the office includes a number of strongly marked attributes, both of character and intellect.

The time for making an appointment approached and there were no applicants. The board of county commissioners became anxious over the matter and cast about for some suitable person to take the place. The members of the board discussed the subject among themselves and with others, and always the respondent, Miller, a former county commissioner, stood out prominently as a desirable person. Commissioner Krider talked with Miller and obtained his promise to accept if appointed. Krider told him to see the other members, which he did, and the board as a whole was satisfied with him. One day the petitioner, Ray, and a friend saw Krider and told him Ray expected to be a candidate. They were advised that the board was committed to Miller, and Ray said if that were the case he would not interfere. After that, and on the morning of January 6, 1908, Ray made a formal application for appointment, accompanying it with recommendations generously signed by old soldiers and friends who said they regarded him as fully qualified to perform the duties and fill the requirements of the office.

On January 7 one member of the board, Herst, resigned, and his place was filled, so that the board was made up of Krider, chairman, Baird, and Schmidt, the new member. Two days later Miller was appointed.

No formal hearing of any kind was had and no formal investigation of Ray's qualification for the office was entered upon at any time by the board as a board. A few minutes before the matter of the appointment

was taken up Krider and Schmidt talked the subject over, and Krider requested Schmidt to present Miller's name, which he did. Upon motion that Miller be appointed Krider and Schmidt voted in the affirmative and Baird in the negative. Baird then moved that Ray be appointed, and this motion was lost, Krider and Schmidt voting in the negative and Baird in the affirmative. There were no other applicants.

Krider testifies to the facts narrated above which occurred before Ray's application was filed, and nobody disputes him, so that a truthful account of all that took place looking to Miller's appointment before Ray applied must be disclosed. This account shows commendable solicitude, zeal and prudence on the part of the board of county commissioners of Harper county. No previous understanding, arrangement or agreement could stand against Ray's appointment, however, when his application came in, if he was qualified. How did Ray come to lose? The plaintiff argues that it was because of a cut-and-dried scheme to put in Miller. What does the evidence show? Schmidt testifies that he had a conversation with Herst the night the latter resigned and Herst said he was not in favor of either Miller or Ray. Evidently there was no Miller "combination" holding him. There is not a syllable of testimony printed in the abstract showing or tending to show that Schmidt ever talked with Miller or with any of Miller's friends or with Krider or anybody except Herst, regarding the appointment of a county assessor, until the day the appointment was made. There is nothing whatever, therefore, to show any previous Miller contract on his part to be carried out regardless of Ray's rights, and Schmidt testifies that at the time the appointment was made he had no personal reason for voting for Miller other than that in his judgment he was thoroughly competent to fill the office.

Baird voted for Ray. What were the reasons for Krider and Schmidt voting against Ray? They both

testify that they had known Ray for some years, Krider's relations with him having been very friendly at all times. They were both familiar with his work as an assessor. Krider knew that this work had caused complaint. They both estimated his ability, his force of character, his energy, his judgment, and the likelihood and probability of his being able to discharge the duties of the office, and they both came to the conclusion that he was incompetent. They both testify that they entertained no feeling of ill will toward Ray, and that they were actuated by no motive and influenced by no consideration except that in their judgment he was incompetent. This being true they would have violated their oaths of office had they voted for Ray.

The plaintiff says that Krider and Schmidt refused to consider the evidence of his competency attached to his application, which, as noted above, consisted of the naked statement that the petitioners regarded him as competent, but there is no evidence contained in the abstract to that effect. True, the statement in the petition was not allowed to overcome the facts known to the commissioners themselves and their own opinions respecting Ray's competency based upon such facts; but in cases of this kind the appointing power must determine upon what it will finally rest its decision. Ray's application, with the accompanying evidence, raised the question of his competency. That question was thoroughly, carefully and honestly considered, and that is what the law requires. It was not necessary that the commissioners should openly argue the question among themselves, although differences are usually adjusted in that way.

It must be remembered that in cases of this kind a charge of fraud, bad faith and disregard of law must be proved by evidence of facts which are inconsistent with official probity. The inquiry starts with the presumption that public officers do their duty, that they act fairly, from good motives, and with the purpose and

intention of obeying the law. Suspicion, surmise, insinuation and innuendo are not enough to overthrow this presumption.

The court is unanimously of the opinion that the evidence fails to establish any violation of the law by the board of county commissioners of Harper county, and the writ is denied.