No. 19,405.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Plaintiff*, v. W. E. DAVIS, as State Auditor, etc., et al., *Defendants*.

### SYLLABUS BY THE COURT.

1. COUNTY BRIDGES—*County Surveyor Must Make Estimates Before Contract is Let.* A statute in relation to the construction of bridges by the county, which provides that the county surveyor, when so directed by the board of commissioners, shall prepare plans therefor and make an estimate of the cost, and that no contract shall be let for a greater amount, in effect forbids the letting of a contract without such estimate having been made.

2. SAME—*Estimates Made by Other Engineers Not Sufficient.* The requirement concerning such estimate is not met by the making of an estimate by an engineer selected by the commissioners, under a provision of the statute authorizing them to employ engineers to assist the county surveyor in preparing plans or superintending the construction of such bridge.

3. SAME—*"Lowest Responsible Bidder"—Commissioners to Determine Who is "Responsible."* Where, through the use of defective material in its construction, a county bridge has to be rebuilt at the cost of the county, the commissioners are justified by virtue of that fact in refusing to regard the contractor who built it as "responsible," within the meaning of that word as used in the statute requiring a contract to be let to the lowest responsible bidder, notwithstanding any evidence that may be offered concerning his solvency and efficiency.

Original proceeding in mandamus. Opinion filed June 6, 1914. Writ denied.

*James M. Meek,* county attorney, *L. W. Keplinger,* and *C. W. Trickett,* both of Kansas City, for the plaintiff.

*John S. Dawson,* attorney-general, *J. P. Coleman,* assistant attorney-general, and *Scarritt, Scarritt, Jones & Miller,* of Kansas City, Mo., for the defendants.

The opinion of the court was delivered by

MASON, J.: The board of county commissioners of Wyandotte county has undertaken to reconstruct a bridge in accordance with statutory authority. It has let a contract for the work and is about to issue bonds to provide means of payment. These bonds have been presented to the state auditor for registration. Believing their issuance to have been irregular he has refused to register them, and the board asks a writ of mandamus requiring him to do so.

The case is submitted on an agreed statement of facts, from which it appears that the county surveyor made no estimate of the cost of the bridge prior to the letting of the contract, but that an estimate was made by an engineer who had been employed by the board to assist the surveyor in preparing the plans and specifications, and who had prepared them. The statute on the subject contains these provisions:

"The county surveyor of the county, when so directed to do by the board of county commissioners, shall make all necessary surveys and investigations and prepare plans and specifications for the reconstruction, improvement, removal or relocation of any bridge or the approaches thereto, together with an estimate under oath of the cost thereof, and file such plans, specifications and estimate in the office of the county clerk of the county. No contract shall be awarded for any such improvement at a price in excess of such estimated cost. The board of county commissioners shall have power, if they deem it necessary to employ engineers to assist the county surveyor in preparing plans and specifications or superintending the construction of such improvements, and to pay such engineers out of the proceeds of bonds issued on account of the cost thereof." (Laws 1909, ch. 64, § 2, Gen. Stat. 1909, § 675.)

While this statute provides that the surveyor shall make the plans and estimate "when so directed by the board of commissioners," we think a purpose is fairly

43—92 KAN.

indicated to require an estimate in every case in which a bridge is to be constructed, and to limit the contract prices accordingly. The express requirement is that the estimate, which is to limit the amount at which the contract shall be let, shall be made under oath by the county surveyor, a public officer. Nothing in the statute in terms dispenses with or modifies this requirement. The commissioners are authorized to employ engineers, but only to assist the surveyor, and to assist him with respect to two enumerated matters—the preparing of plans and specifications and the superintending of the construction. We do not think these provisions can be so expanded as to authorize the estimate of an engineer selected by the commissioners to be substituted for that of the county surveyor. An engineer so employed may possess a higher degree of technical skill than the county surveyor—that may indeed be the very reason for his selection. But his function is to advise and assist. He can not by virtue of his employment in that capacity perform a duty which the law devolves upon a public officer. As the county surveyor made no estimate in the present case the requirement of the statute was not met, and upon that ground the auditor was justified in refusing to register the bonds.

The statute requires such a contract as that here involved to be awarded to the lowest responsible bidder. In the present case the lowest bidder was the Midland Bridge Company, and the contract was let to the Kansas City Bridge Company. The refusal to register the bonds is also based upon this fact. The county commissioners undertake to justify their course upon the ground that in their opinion the Midland Bridge Company is not "responsible" within the meaning of the statute. The agreed statement of facts shows that in 1904 the county let a contract for the construction of a bridge, which was sublet to the Midland company, which did the work; that by reason of the use of defective material the piers gave way and the bridge had to be reconstructed, at a cost of $120,000; that in 1912,

when the defect was discovered, the commissioners called upon the Midland company for an explanation, and that company, after due investigation, made a written report undertaking to show that the company was not at fault, but apparently conceding that defective material had been used, as shown by these extracts:

"From the above correspondence, it will be seen that we ordered a good Portland cement for the West Kansas Avenue Bridge. You will note from the last letter received from the Union Sand & Material Company that they, themselves—the manufacturers of Red Ring Portland cement—do not think that Portland cement was used at all, and the copy of their letter to the Halliwell Cement Company, dated March 10, 1905, shows that at that time, when the trouble first occurred on the piers, the material from these piers tested by them, did not look like Portland cement. Therefore, whether we got Portland cement at all, from the evidence above given, is a question. If we did get Portland cement, it must have been defective in some way, as it did not set up, and the writer believes that it had too much free lime in it, and this defect could produce the effects which resulted. . . . It is unfortunate that the inspectors on this job did not make tests of the cement when it was used, as we believe the poor cement would have been detected and the trouble would not have occurred had they done so. We have tried our best to get at the bottom of this trouble, and we hope we have proved to you that we were not to blame in the matter."

The word "responsible" as used in the statute "implies skill, judgment and integrity necessary to a faithful performance of the contract, as well as sufficient financial resources and ability." (*Williams v. City of Topeka,* 85 Kan. 857, 118 Pac. 864. See, also, notes to that case in Ann. Cas. 1913 A, 497, and 38 L. R. A., n. s., 672.) If the commissioners believed from the company's record that it was lacking in some of the qualifications necessary to insure the faithful and efficient performance of the contract, they were justified in refusing to deal with it, notwithstanding it

might be entirely solvent itself, and might tender a bond signed by solvent sureties. The fact that the county had lost a large sum of money because work previously done by it turned out to be defective was a sufficient basis for such an opinion. Various matters are urged as tending to show a want of good faith on the part of the commissioners, but we do not regard them as sufficient to overcome the presumption in their favor, supported by the existence of a reasonable ground for their action.

The Midland company has been made a party to this proceeding, and asks that the registration of the bonds be denied on the ground that the contract was not let to the lowest responsible bidder. It declines to be bound by the statement of facts agreed to by the county board and the state auditor, and maintains that the commissioners acted arbitrarily. In support of this contention it urges that the commissioners refused to give it a hearing upon the question of its responsibility. That might in some circumstances be persuasive, and even convincing, against them, but as the commissioners were acting upon personal knowledge of a matter which they must be deemed to have regarded as conclusive on the subject, it was not necessary that they should make a further investigation or have a formal hearing. (*Ray v. Miller*, 78 Kan. 843, 98 Pac. 239.) The company presents in this court strong evidence of its responsibility and high standing. The question before us, however, is not whether it is responsible, but whether the commissioners, acting fairly and reasonably, reached the contrary conclusion. The showing made here seems intended to demonstrate that the bridge formerly constructed by the company was not in fact defective. In view of its own written report on the subject, we think the commissioners might reasonably have rejected this evidence, as well as that showing the company's general reputation and efficiency. An affidavit has been filed here charging one of the commis-

sioners with saying that the company, would never get a contract with the county until it paid a claim which he was making against it, and which it disputed. This is direct evidence of bad faith, but in view of the entire record we do not regard it as sufficient to establish it.

The writ of mandamus is denied.