No. 19,809.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Plaintiff*, v. W. E. DAVIS, as State Auditor, etc., *Defendant*.

SYLLABUS BY THE COURT.

MANDAMUS—*Registration of Bridge Bonds—Bids Conditioned on Settlement with Former Contractor—Free Competition.* The county commissioners let a contract for the building of a bridge which was decided to be invalid because of an irregularity in the estimate of the cost of the bridge. Before the decision was announced work had been begun on the bridge under the invalid contract. The county commissioners began anew and advertised for bids for the entire bridge upon the condition that the successful bidder should settle with the former contractor for the work done and material furnished towards the building of the bridge, and also hold the county harmless for double liability for such work and material. A number of bids were submitted and the former contractor became the successful bidder at the second letting. *Held*, That the terms and conditions of the letting did not substantially defeat free competitive bidding nor invalidate the contract made with the successful bidder.

Original proceeding in mandamus. Opinion filed January 9, 1915. Writ allowed.

*L. W. Keplinger,* and *C. W. Trickett,* both of Kansas City, for the plaintiff.

*John S. Dawson,* attorney-general, and *A. M. Seddon,* of Kansas City, Mo., for the defendant.

*Scarritt, Scarritt, Jones & Miller,* of Kansas City, Mo., as *amici curiæ.*

The opinion of the court was delivered by

JOHNSTON, C. J.: In this proceeding the board of county commissioners of Wyandotte county asks the issuance of a writ of mandamus to compel the auditor of state to register certain county bonds issued to pay for the construction of a county bridge. A former application to register the bonds of the county for that purpose was denied because of a noncompliance with a particular statutory requirement as to the making of an estimate of the cost of the bridge. (*Wyandotte County v. Davis*, 92 Kan. 672, 141 Pac. 555.)

It appears that a portion of the work had been done under the first contract before the decision holding it to be invalid was announced. Following that decision the commissioners began anew, and the detailed estimate of the county surveyor, lacking in the first instance, was obtained and approved. Plans and specifications were prepared and notice of the letting of a contract was made as if no work had been done under the invalid contract, and upon the theory that the work done and material furnished by the first contractor and for which no payment had been made was owned by that company. In the second letting notice was given to each bidder that if successful he must settle with the former contractor for the unfinished abutment and piers placed there by it, and which, it is agreed, were of the value of $25,000, and must also hold the county harmless from any double liability therefor. It was further stipulated that the commissioners had no money to pay for what had been done and furnished under the invalid contract nor any means for paying for the bridge to be built except by the issue of bonds and that under the law bonds could only be issued to the extent of the contract price of the bridge, and further, that the purpose of the commissioners in asking that bids for the bridge be submitted as though nothing had been done towards its construction and requiring the successful bidder to settle with the former contractor

and hold the county harmless from double liability was to enable the county to issue bonds and pay for the bridge by the only means that they found to be available.

Parties appearing as *amici curiæ* are contesting the right of the commissioners to issue the bonds or of the auditor to register them upon the ground that there was no fair and reasonable opportunity for competition in the letting of the contract because all the bidders were not put upon an equality and permitted to bid on the same terms and conditions. This contention is based mainly on the fact that the former contractor, which had begun the work on an abutment and two of the piers and owned the structure so far as it had been built was itself a bidder. It appears that the structure was in place and its condition and extent was open to all alike for inspection and valuation. It conformed with the plans and specifications that had been approved, and met all the requirements of the commissioners. The terms and conditions were well known, and all bids were to be made upon the conditions as they existed at the place where the bridge was to be built when the contract was let. Every bidder had the opportunity to obtain from the owner so much of the structure as had been erected at its value or to build the entire bridge after the material that had been placed in the stream had been removed. It is true the owner of the material in the unfinished abutment and piers may have been able to make a lower bid than the others in order to avoid a loss which would result from the failure to dispose of the material which it had placed in the stream to a contractor and to be obliged to remove it from the place where the bridge was to be built. That company may have had the advantage of one who has material on hand suitable for the structure, and which might not be so valuable for use elsewhere. Such an advantage, however, does not militate against the public interest nor violate any statutory provision. It provided a way in which the former con-

tractor could obtain payment for work and material honestly done and furnished, and at the same time secure to the county· a bridge for the amount of the bid made in the first instance, and about the fairness of that letting there is no question, nor is there complaint by any of those who were bidders at the second letting. The only complaint comes from members of the company which was unsuccessful in the first letting, and which, according to the findings of the commissioners, was not responsible within the meaning of the statutes. The letting in controversy here was open, and the terms and conditions were brought to the notice of all who wished to bid. · There appears to have been no favoritism nor deceit in the action of the commissioners, and although there was the unusual condition that the bidders should settle with the contractor who had started the work, it did not, in the opinion of the court, interfere with free competition in the bidding nor invalidate the contract which was made with the successful bidder. The bonds. being valid they should be registered, and therefore the peremptory writ will be issued in accordance with the prayer of plaintiff's petition.