No. 36,705

C. R. LEWIS et al., *Appellants*, v. THE CITY OF SOUTH HUTCHINSON, Reno County, et al., *Appellees*.

No. 36,752

CHARLES McMILLAN et al., *Appellants*, v. A. H. MONTFORD, as an Individual and as Mayor of the City of South Hutchinson, Reno County, et al., *Appellees*.

(174 P. 2d 51)

Opinion filed November 9, 1946.

*Roy C. Davis,* of Hutchinson, argued the cause, and *Frank S. Hodge, Wm. H. Vernon, Eugene A. White* and *Elmer Goering,* all of Hutchinson, were with him on the briefs for the appellants.

*J. Richards Hunter,* of Hutchinson, argued the cause, and *Walter F. Jones* and *R. Y. Jones, Jr.,* both of Hutchinson, were with him on the briefs for the appellees.

The opinion of the court was delivered by

BURCH, J.: The above-entitled cases have been consolidated on appeal by agreement of counsel for the respective parties. Case No. 36,705 is an action in which a permanent injunction was sought against certain named officials of the city of South Hutchinson, Kan., for the purpose of preventing such officials from registering and disposing of certain general improvement bonds. The district court, after making certain preliminary rulings, sustained a demurrer to the amended petition seeking the permanent injunction. The second case is a mandamus action seeking a writ requiring the mayor and the councilmen of the city of South Hutchinson to pass an initiatory ordinance without alteration or in the alternative to call an election for the purpose of submitting the proposed ordinance to the vote of the electors of the city. The district court sustained a motion to quash the alternative writ. Appeals followed in due course. In a general way the cases involve the right of the designated· officials to continue proceedings in furtherance of the construction of a waterworks system.

The first question which will be considered is whether the demurrer to the amended petition in the injunction action was properly sustained. Consequently, it is necessary to analyze the allegations of the amended petition. Such petition alleges that the plaintiffs are electors and taxpayers of the city; that they are aggrieved by the result of an election held upon a question of issuing certain bonds and of extending the credit of the city; that the questions involved in the action are of common or general interest to many persons and that the suit is brought for the benefit of all persons even though it is impractical to bring all of them before the court; that the named individual defendants are respectively the members of the city council and the clerk and the treasurer and constitute the governing body of the city. The petition alleges that an election was held on June 3, 1946, for the purpose of issuing general obligation bonds of the city in the principal sum of $115,000, and that the proceeds from such bonds were to be used for the construction of a waterworks system and appurtenances thereto "for the purpose of supplying the city of South Hutchinson and its inhabitants with water for all proper purposes"; that on June 4, 1946, and before any official canvass of the votes had been made or could be made, the defendants either did, or attempted to, accept a bid of a group or combination of five bonding companies for the sale of the bonds, and attempted to. authorize the mayor and the city clerk to sign a contract for the sale of the bonds at par and accrued interest, with denominations, due dates and interest rates as set out in the petition. The petition further alleges that no ordinance providing or purporting to provide for the issuance of the bonds was passed or adopted until June 10, 1946, and that no purported ordinance was published in the official city paper until June 14, 1946, and that the governing body of the city was acting with all possible speed in the preparation of a transcript and the registering of the bonds and in doing and attempting to do all such things as were necessary to making said bonds the outstanding obligations of the city; that all such acts were being done before such time as the legality of the creation of such bonds might be investigated and tested and that the city officials were proceeding without giving time or opportunity to the plaintiffs and other electors and taxpayers similarly situated to ascertain whether said election was had and the results declared according to the laws and authorities applicable thereto.

The foregoing, in substance, sets forth all of the allegations contained in the first four paragraphs of the appellants' amended petition. The question before us is whether a cause of action was pleaded in any part of or in the entire petition. In considering such question, certain factors should be noted. The allegations referred to assert that an election was held for the stated purpose but the allegations contain no assertion that the election was invalid. The allegations do not set forth that the officials were acting fraudulently or in bad faith in accepting the bid of the bond purchasers. The allegations are simply to the effect that the negotiations for the sale of the bonds were made before any official canvass of the votes had been made and before any ordinance providing for the issuance of said bonds had been passed and also before any purported ordinance was published in the official city paper, and also before the appellants had time and opportunity to investigate and to ascertain whether the election was had and its result declared according to the laws and the authorities applicable thereto. It should be observed also that the allegations thus far considered do not set forth or refer to any statute or statutes which prohibit the defendants from negotiating or selling the bonds without an official canvass having been made of the votes at the election or unless an ordinance providing for the issuance of the bonds had been passed or published, and no statute has been referred to which prohibits the appellees from negotiating for or selling the bonds before electors and taxpayers had an opportunity to determine whether the election was had according to the laws applicable thereto.

The next and fifth paragraph of the amended petition sets forth that no detailed plans and specifications for the waterworks system had been prepared other than a rough or preliminary plan and estimate and that under such preliminary plan the estimate is slightly in excess of the sum of $115,000. Following such allegations is another to the effect that the preliminary plan is wholly inadequate for the purpose of constructing the waterworks; that said inadequate system of waterworks cannot be constructed except at a cost greatly in excess of the amount which could be realized from any sale of the bonds for the reason that no manufacturers and distributors of the necessary materials, in quoting current prices therefor, would quote firm prices but would only quote current prices which would be subject to increase to the extent that prices might be in effect at the time of delivery; that by reason of such unprecedented

situation, contractors could not be expected to make a guaranteed or firm bid for any completed waterworks system except at an exorbitant and an unreasonably high and excessive cost but could be reasonably expected to bid only by the insertion of a so-called "escalator" clause providing, in substance, that the cost and aggregate contract price for the completed work would be increased to the extent that labor and material costs increased above current prices. In other words, the fifth paragraph of the amended petition alleges, in substance, that it is impractical and hazardous for the defendants to proceed in furtherance of the construction of the waterworks system for the city because in the opinion of the plaintiffs the city officials will not be able to execute a satisfactory contract with a reliable contractor. Thus, it will be seen that the plaintiffs seek to have their speculative prediction in regard to such questions accepted and the defendants enjoined from exercising their own judgment in regard to the subject matter.

The sixth paragraph of the amended petition sets forth that the city of South Hutchinson covers a wide area and that the houses constructed therein are not close together and that many houses and other improvements therein are separated from others by considerable distance and that a sizeable portion of the city is made up of land which is used for farming purposes and has never been platted; that the city includes one industry which is separated from the residence and improved portions of the city and that about such industry several residences are grouped. The petition thereafter alleges that the industrial property and the several houses grouped about such property are assessed at approximately 46 percent of the total assessed value of all of the property within the area. Paragraph 6 closes with the following allegation: "Said proposed plan of waterworks system does not extend to or include said territory as well as other territory and improvements located within said area, and all of such territory representing substantially more than one-half of the total valuation *of said area* will be wholly unserviced by said proposed system and will be dependent for domestic water, fire protection water and process water solely upon its own resources, as it is at this time." (Emphasis supplied.)

The seventh paragraph of the petition consists of estimates as to the cost of operating the proposed waterworks system and a statement is made therein that the annual operating deficit would be in excess of $2,900 exclusive of bond interest and retirement require-

ments. The paragraph also sets forth that a conservative estimate of the cost of constructing a reasonably adequate waterworks system would be not less than $155,000 and that a conservative estimate of the operating deficit in such event would be in excess of $3,900 exclusive of bond interest and retirement requirements. The paragraph also contains an allegation that if the anticipated waterworks system included the servicing of process water the estimate of the cost would be $217,000 and that all of the aforesaid estimates are based on current quoted prices which would be subject to increase at the time of actual delivery.

Paragraph 8 of the petition contains allegations as to the proper interest rates which should be paid upon bonds. Comparison of the alleged proper rates with the rates set forth in paragraph 4, which are the interest rates at which it is alleged the city officials are about to sell the bonds, discloses that the plaintiffs, in substance, contend that approximately one-half of the bonds are about to be sold bearing interest rates which are three-fourths of one percent too high.

Paragraph 9 of the petition consists of an assertion that the statutory limitation as to the gross amount of bonds which may be issued for the involved purpose would be insufficient for the construction and installation of any waterworks system which would be reasonably adequate and that, therefore, the sale of the authorized bonds would create an unjust, illegal and useless burden upon the property and the taxpayers of the area and that any reasonably adequate system could not be constructed for an amount equivalent to the proceeds of the sale of the proposed bonds.

Paragraph 10, contains allegations asserting that because of the character of the area and the scattered population, the cost per person of installing an adequate waterworks system would be from three to six times the average cost, and that the cost of operating the alleged inadequate proposed system would be not less than three times the average normal cost, and further that the investment necessarily would be so great and disproportionate as to make it impossible for such waterworks system to be self-supporting. The paragraph continues by alleging that a logical result of the installation of the waterworks system would be the subsequent installation of a sewer system and that the cost of the sewer system would be greater than the cost of the waterworks system and that it would be impossible to construct both systems within the aggregate statutory bond limitation; that, therefore, the objectives could not be legally and

lawfully attained but that irreparable injury and waste would result, for which the plaintiffs would have no adequate remedy at law. The paragraph closes with an allegation that inquiries made at 167 homes in the city out of a total of approximately 227 reveal that 70 percent are being served by private water systems and that the commercial industry referred to in the petition now has its own private water system.

Paragraph 11 of the petition sets forth that the statutes of the state of Kansas (no particular statute being cited) provide that all municipal bonds of the kind and character involved in the action must be first offered for sale to the state school fund commission, which commission has a right to elect to purchase the same for a period of ten days thereafter and that such statutes further provide that if the commission does not purchase the bonds they may be advertised in the official paper and sold for cash at not less than par, or that the same shall be sold at public sale on ten days' publication and the obtaining of sealed bids; that the defendants have ignored the provisions of such statutes in attempting to contract for the sale of said bonds and are about to and will dispose of the bonds unless restrained from so doing.

Paragraph 12 consists of allegations asserting that the proposed bonds contain the recitals described in G. S. 1935, 10-112, and that, therefore, when such bonds have been duly registered they will import conclusive verity in favor of all persons purchasing the bonds; that they will be negotiable; that the defendants intend to register them as authorized by law and sell them and cause them to become a binding obligation and lien, to the irreparable loss and damage of the plaintiffs and other property owners and taxpayers of the city.

Paragraph 13 concerns the attempt of the plainitiffs to have an initiatory petition for a proposed ordinance either adopted or submitted to a vote of the people. The subject matter referred to in the paragraph is the same as that which forms the basis for the mandamus action and will be treated subsequently in this opinion.

Paragraph 14 of the petition alleges that unless an injunction is granted the defendants will violate section 5 of article 12 of the constitution of the state of Kansas, which provides that the power of taxation by city authorities shall be so restricted as to prevent the abuse of such power.

The final paragraph of the petition alleges that the attempt of the defendants to cause the bonds to become an obligation of the

city constitutes a clear abuse of discretion, an exercise of bad faith, and will be illegal unless the defendants are restrained and enjoined.

1. The allegations of the amended petition disclose that a controversy has arisen between minority electors of the city and the city officials who are proceeding to follow the will of the majority of the electors as expressed in the election, by issuing bonds for the purpose of constructing the waterworks system. The plaintiffs contend that an adequate system cannot be built for the amount of the bonds authorized by the election, to wit, $115,000, and that, therefore, the bonds should not be sold. The question at once arises—Can minority electors enjoin the necessary and normal result of a bond election by contending that the amount of bonds authorized is insufficient for the proposed purpose? The question has been squarely answered in the negative by this court in the case of *Kansas Power Co. v. City of Washington,* 145 Kan. 962, 67 P. 2d 1095. The first subparagraph of the syllabus of the case reads as follows:

"The question whether an adequate municipal plant can be constructed for the amount of money which can be realized from a specified bond issue authorized by popular election does not present an issue which the courts have jurisdiction to determine."

The cited case is in point as to many of the contentions advanced by the plaintiffs. From the body of the opinion, by Mr. Chief Justice Dawson, the following is quoted:

"It is first contended that the city is without right to issue bonds to erect an inadequate municipal light and power plant.

"Who is to decide whether a proposed municipal utility will be adequate to serve the municipality? Is that a justiciable question to be decided on the opinion testimony of expert witnesses? Where shall we find in the lawbooks any sanction for the substitution of the judgment of a judicial tribunal for that of an administrative tribunal on such a question as the requisite capacity of a proposed municipal utility to serve the needs of the community? No such case is cited. The nearest analogous cases in our own reports are the paving cases. In *Fairchild v. City of Holton,* 101 Kan. 330, 166 Pac. 503, taxpayers sought to enjoin the paving of three blocks of a street on various grounds, one of which was that the paving was unnecessary. The trial court found otherwise, and made a finding that the best interests of the city would be served by paving the three blocks in controversy. In affirming the judgment, this court said:

"'That was further than the court needed to go, for that matter was vested in the city and not in the court, and so long as the court failed to find that the city had abused its power, there could be no judicial interference, even if the court itself had thought the paving unnecessary.' (p. 333.)

"In *Warner v. City of Independence,* 121 Kan. 551, 247 Pac. 871, the action

was by taxpayers to challenge the regularity of certain proceedings undertaken by the city to pave a street and highway. In the petition, among other matters, it was alleged that the city's plan for the improvement of the street and road was ill-advised, that the quality of the materials to be used was poor, and that the proposed improvement— ·

"'Would only result in said street having to be repaved within five years, and that to proceed to pave said street in such a manner would be to deprive the taxpayers in the benefit district and in the city and county at large of their property in the way of taxes.' (p. 555.)

"The trial court ruled that it had no jurisdiction 'to hear and determine the kind or quality of paving.' On appeal this court said:

"'We note what plaintiffs have to say about defendants' plans and specifications for the improvement. It will be a pity, indeed, if plaintiffs' prophecy comes true that the specifications are so defective that the street and road will have "to be repaved within five years," but discretion and responsibility on such matters must be vested somewhere. Under this statute they are vested in the city and county governing bodies, not in these plaintiffs, and not in the courts. The courts cannot interfere with the exercise of that discretion and responsibility where, as here, no substantial showing of fraud is disclosed by the record.' (p. 558.)

"In State, ex rel., v. Younkin, 108 Kan. 634, 639, 196 Pac. 620, where the acts of public officials in respect to road building were called in question, this court said:

"'When the legislature confers power in general terms upon an official body, without prescribing the details for the exercise of that power, the courts will not be officious to interfere with the official body's discretionary methods of performing the public duty intended by the legislature in granting such powers.'

"In 32 C. J., 260-261, it is said:

"'A court of equity will not interfere with the exercise of discretionary powers on the part of a municipal corporation or its officers so long as the limits of those powers are not exceeded, and no fraud, malice, bad faith or improper motives are shown, for otherwise this would be an assumption by the court of the right to exercise the powers delegated only to the corporation or its officers. The court has no authority to enjoin the corporation from doing what the law authorizes it to do. So long as they have acted honestly, the fact that a mistake has been made in the exercise of this discretion, or that the acts are hasty and ill-advised and not for the best interests of the inhabitants, constitutes no ground for an injunction. . . . It is only where it is clearly shown that the municipal corporation or its officers has transcended the powers vested in them, or that there has been an abuse of discretion, that a court of equity will interfere.'

"To the same general effect were Hessin v. Manhattan, 81 Kan. 153, 105 Pac. 44; Stevenson v. Shawnee County, 98 Kan. 671, 678, 159 Pac. 5, and syl. ¶ 5. (See, also, State, ex rel., v. Board of Education, 122 Kan. 701, 253 Pac. 251.)

"Incidental to appellant's contention which we have just considered, it is also urged that the court erred in its refusal to make a finding of fact on the question whether the proposed municipal plant would be adequate to serve the needs of the city and its inhabitants. As we have seen, however, the

adequacy of the plant was not a justiciable question between plaintiff and the city, so the trial court's failure to make a finding of fact on this point was not error.

"Plaintiff next contends that it was entitled to an injunction as a taxpayer because the governing body was induced to inaugurate the proceedings looking to the establishment of a municipal power plant by misrepresentations of fact and fallacious estimates of the cost of such a plant submitted to the city by a private firm of engineers. To this contention there are at least two answers. This record does not demonstrate that the estimates were fallacious, nor that the advice of the engineers who enjoyed the confidence of the city officials was false. Furthermore, the validity of proceedings undertaken by statutory authority cannot be judicially set at naught because public officials and the electors for whom they act may have been overpersuaded by false or fallacious arguments to adopt the course of action they eventually chose to pursue. In *City of Oswego v. Davis,* 97 Kan. 371, 154 Pac..1124, a proposed bond issue was challenged on the ground that the city and its officials had been misled as to the amount of bonds it would require to extend and improve the municipal water plant. This court held that the point did not present a justiciable question. We said:

" 'But this objection is no more true as to a bond election than to any other election. In any free government the wise and the foolish, the vain and the venal, the radical and the conservative, may and do exercise the liberty of persuading their fellows to adopt their views; and all sorts of reasons, logical and illogical, serious, trivial and absurd, are given by electioneering advocates in their endeavors to win the support of the voters. A bond election in Oswego is no more likely to be illegally affected by the misrepresentations, wheedling, or cajolery of the promoters of the bond issue than are elections elsewhere or on any other proposition submitted for the suffrage of the people.' (p. 374.)" (p. 965.)

With the foregoing general principles in mind, additional consideration will be given to the allegations of the petition. Complaint is made therein that the defendants have accepted the bid of a group or combination of five bonding companies for the sale of the bonds and that such acceptance occurred before any official canvass of the votes had been made and before any ordinance providing or purporting to provide for the issuance of bonds had been passed or published in the official city paper and that the city officials were acting with all possible speed in the preparation of a transcript and the registering of the bonds. The plaintiffs do not cite any statute or statutes which require compliance with any of the conditions which they assert should be complied with before arrangements are made for the sale of bonds. We have statutes which require compliance with some of such conditions when a waterworks system is to be extended but they do not apply to the purchase or construction of a waterworks system following an elec-

tion authorizing the same. In the absence of any statutory regulations to the contrary, the general rule is that the question of when it is advantageous to sell bonds is one for determination by an administrative tribunal rather than for the judgment of a judicial tribunal and the only limitation which courts ordinarily place upon the exercise of discretion on the part of the administrative authorities arises in circumstances where the purposes for which the bonds were originally voted have so changed that it would be inequitable to allow the bonds to be issued. In support of such a rule see the case of *State, ex rel., v. City of Topeka,* 141 Kan. 309, 41 P. 2d 260, and see, also, *Rowland v. Reno County,* 108 Kan. 440, 195 Pac. 868.

The fifth paragraph of the petition alleges that no detailed plans or specifications of the proposed waterworks system had been prepared but it confesses that a rough or preliminary plan and estimate had been prepared although it is contended that such preliminary plan is inadequate. From what has been heretofore set forth, it clearly appears that even if the city officials had been misled by inadequate plans and by improper estimates, nevertheless, the proceedings undertaken by the city officials cannot be enjoined by the courts because the public officials may have been incorrectly persuaded to adopt the course of action they chose to follow. (See *Kansas Power Co. v. City of Washington,* supra.)

The statement is made in the petition that the alleged inadequate plant was estimated to cost "slightly in excess of the sum of $115,000." Clearly such an indefinite, weak allegation would not justify a court in interfering with the administrative discretion even in the absence of a motion to make the allegation more definite and certain. A small change in the specifications might bring the estimate within the amount of the bond issue. The difference may have been inconsequential and the plaintiffs had the burden of alleging that they would sustain a substantial loss. Counsel for the plaintiffs abandon the point in the briefs filed in this court. We find nothing in the additional allegations of the fifth paragraph which would justify our departing from the rule announced in *Kansas Power Co. v. City of Washington,* supra. As hereinbefore stated, the plaintiffs in paragraph 5 seek only to have the court adopt the opinion of the plaintiffs as a basis for a finding by the court which would be contrary to the conclusion of the administrative officials.

The allegations in the sixth paragraph of the amended petition, relative to the area, the wide separation of the houses, the fact that a portion of the city is made up of land which is used for farming purposes, and that the city includes one large industry which is separated from the improved portions of the city, add nothing which states a cause of action. It is alleged therein also that 46 percent of the total assessed valuation of all of the property in the city is on property located within an area to which the proposed water system will not extend. The paragraph closes with an indefinite allegation to the effect that the system will not extend to territory representing substantially more than one-half of the total valuation of said area. It is not clear whether the use of the phrase "of said area" refers to the entire area of the city or to the area separated from the residential and improved portions of the city. In construing the pleading most favorable to the pleader, we will assume that the allegation asserts that over 50 percent of the entire area of the city will be wholly unserviced by the proposed water system. Nevertheless, it must also be assumed because of the election result, confessed by the petition, that a majority of the electors in the city were in favor of constructing a waterworks system. Surely, there must have been very few, if any, instances wherein a proposed plan of a water system originally contemplated that water service would be extended to the property of each and every landowner in the city. If the legislature intended that such should always be true before a waterworks system could be installed within a city area, then it is difficult to understand why it was necessary for the legislature to have passed many statutes which provide for the extension of waterworks systems within city areas. (For example, see G. S. 1945 Supp., 12-836 and G. S. 1935, 15-806.) Again it should be noted that the legislature has not seen fit to require that, before a water system can be constructed within a city, any certain percent of its area or any certain percent of the total assessed value of the property within the city must be served by the proposed water system. At least we have been cited no statute or statutes to such effect by counsel for plaintiffs. Perhaps the members of the legislature are of the opinion that business districts and densely-populated sections of a city should be able to have water service and fire protection regardless of whether the system extends to the city limits in all directions or serves a large industry which, because of necessity, would have its own water system. In the absence of statutory limitations upon the power of

the municipal authorities, courts ordinarily will not create or impose restrictions and limitations which interfere with the discretion of administrative authorities unless a clear and convincing showing is made that the proposed action of the officers of the municipality constitutes an arbitrary abuse of power equivalent, in most instances, to actual fraud or bad faith. In similar circumstances this court has held that a body of land within the limits of a city, although not divided into blocks, lots, streets and alleys, is, nevertheless, subject to city taxation even though a part of it is used for agricultural purposes. (*Mendenhall v. Burton,* 42 Kan. 570, 22 Pac. 558, and *Hurla v. Kansas City,* 46 Kan. 738, 27 Pac. 143.) Likewise, this court has held that the extent of the value of the ownership is not to be considered in the absence of statutory requirements to such effect. (*Clarke v. Lawrence,* 75 Kan. 26, 88 Pac. 735.)

The seventh paragraph of the petition consists of estimates as to the cost of operation of the alleged inadequate waterworks system. It is clearly another instance of an attempt to induce a court to substitute its opinion for a conclusion to the contrary which may be reached by administrative officers. The allegations of paragraph 8, as to the proposed interest rates being too high, are likewise an effort to induce a court to accept the opinion of the plaintiffs rather than to permit the administrative officers to exercise their own judgment. Paragraph 9 is, in substance, a repetition of the contention that the municipal officers should be enjoined because the amount of the bonds which may be issued for the proposed purpose would be insufficient for the construction of an adequate waterworks system. The contention cannot be the basis for an injunction. Paragraph 10 also seeks only to induce the court to assert its judgment in the place of the considered opinion of the municipal authorities.

The allegations of paragraph 11 of the petition are to the effect that the officers of a city cannot enter into a contract for the sale of improvement bonds before such bonds have been offered to the school fund commission. Probably counsel for plaintiffs have in mind that the proposed sale is being made in violation of G. S. 1935, 10-106, although the petition does not specifically plead a violation of such section or any other statute. Moreover, the petition does not set forth or attach thereto a copy of the contract which it is alleged was entered into between the bond buyers and the city. In the case of *City of Washington v. Investment Co.,* 117 Kan. 15, 230 Pac. 311, the contract for the purchase of bonds was

subject to the preferential right of the state school fund commission to purchase the bonds, and such was true also in the case of *Grecian v. Hill City,* 123 Kan. 542, 256 Pac. 163. In each of such cases this court held that the contract was not void and unenforceable because the bonds had not been offered to the school fund commission before the contract had been entered into. We cannot determine from the petition, therefore, that the contract entered into between the defendants and the bond buyers was void because of the failure to offer the bonds to the state school fund commission. If the plaintiffs desired to contend that the contract was void because of the failure to make any provision for the bonds being offered to the school fund commission, it was incumbent upon the plaintiffs to plead the contract and to attach a copy of the same to their petition. Also it should be noted that the plaintiffs in paragraph 11 do not allege that they will suffer financial loss by reason of increased taxes or otherwise because of the alleged failure of the municipal authorities to offer the bonds to the state school fund commission. In the absence of any allegation to such effect, the failure to offer the bonds to the commission would constitute merely an irregularity in the proceedings of the municipal officials, which could be questioned only by the state at the instance of the attorney general or the county attorney and not by a private citizen or taxpayer. Such rule applies also to the alleged failure of the defendants to pass an ordinance before selling the bonds as required by G. S. 1935, 12-801, and possibly by G. S. 1935, 12-802, as so contended by the plaintiffs. (See *Grecian v. Hill City,* supra, p. 548.)

Paragraph 12 of the petition alleges nothing more than that the proposed bonds will become conclusively valid, negotiable obligations of the city unless the defendants are restrained from proceeding to register the bonds as authorized by law. Of course, the allegations to such effect state no reason which would justify the restraint of the defendants. The 13th paragraph of the petition, which pertains to the initiation of a petition for a proposed ordinance, which would in effect prohibit the defendants from proceeding with the construction of the proposed waterworks system, will be considered in the second part of this opinion.

It is asserted in paragraph 14 of the petition that unless the defendants are restrained from proceeding with the issuance of the bonds and from performing other acts in furtherance of the construction of the waterworks system, such activity on their part

will constitute a violation of section 5 of article 12 of the constitution of the state of Kansas. The section under consideration reads as follows:

"Provision shall be made by general law for the organization of cities, towns and villages; and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, shall be so restricted as to prevent the abuse of such power."

It should be noted, in considering the sufficiency of the petition, that the plaintiffs do not contend that the state legislature has violated the admonition contained in the statute by the passage of any particular statute or statutes, the compliance with which results in the city officials being clothed with authority to abuse the power of taxation. All that the plaintiffs contend is that the defendants will abuse such power unless they are restrained from doing certain authorized acts. Time after time this court has held that the constitutional provision is an admonition to the legislative branch of our government. From the opinion in *State, ex rel., v. Kansas City*, 149 Kan. 252, 86 P. 2d 476, the following is quoted:

"This provision has been the subject of judicial exposition ever since the foundation of the state. It scarcely states a rule of constitutional law that a court can lay hold of. It is largely admonitory and was intended by the framers of our constitution to be addressed to the wisdom and conscience of the legislative branch of our state government. (*Hines, et al., v. City of Leavenworth, et al.*, 3 Kan. 186, 203-204; *City of Newton v. Atchison*, 31 Kan. 151, 1 Pac. 288; *Wulf v. Kansas City*, 77 Kan. 358, 362, 94 Pac. 207; *State v. Keener*, 78 Kan. 649, 651, 97 Pac. 860; *State, ex rel., v. Kansas City*, 125 Kan. 88, 90, 262 Pac. 1032.)

"Speaking of this clause of the constitution in *Hines, et al, v. City of Leavenworth, et al.*, supra, Mr. Chief Justice Crozier said:

" 'It is not a subject proper for judicial cognizance but belongs to another tribunal. It would involve the exercise of a discretion that the framers of the constitution never intended should be deposited in any court. It would in effect constitute the court a lawmaker rather than a law expounder. When a law is passed embracing any of the subjects mentioned in the fifth section, it is the duty of the court, when called upon, to determine whether it contains restrictions, and if it does contain them the law must be held to be valid, notwithstanding the members of the court might doubt their sufficiency to prevent abuses. It is a subject wholly under the control of the political department of the government. Whatever the legislature determines to be a sufficient restriction, if it be a restriction at all, must be final.' (p. 203.)

"An examination of the statute under which the challenged proceedings are being undertaken will reveal a number of restrictions which the legislature must have deemed sufficient to prevent the defendant city from abusing the corporate powers vested in it, and the legislative wisdom on this subject is not open to judicial review." (p. 255.)

Again, it should be noted that the plaintiffs do not allege that the defendants have violated any particular statutory restrictions upon the power of the city officials to proceed with the establishment of the proposed waterworks except such as have been heretofore considered. Perhaps we should consider what restrictions the legislature has seen fit to enact which have for their purpose the prevention of an abuse of the taxing power. In G. S. 1935, 12-801, the legislature provided that if a majority of the electors voted in favor of the issuance of bonds for the purpose of supplying the city with water or other utilities, it should be lawful for the governing body of the city, by ordinance duly passed, to direct the issuance of the bonds so voted as provided by law. In section 12-802, the legislature admonished the governing bodies of cities to pass an ordinance directing the calling of the election for the submission of the question to the electors. In G. S. 1935, 12-803, in order to protect against an abuse of the power of taxation, the legislature provided that no bonds should be issued in excess of 15 percent of the assessed valuation of the city. In substance, the same restrictions were embodied by the legislature in G. S. 1935, 12-834 and 12-843. There is no contention on the part of the plaintiffs in the instant case that the defendants did not comply with such restrictive requirements except the alleged failure to pass an ordinance directing the issuance of the bonds. Possibly the legislature has passed other acts which may be now in full force and effect and that may be applicable to actions which have been taken or may be taken by the public officials in this case, but the plaintiffs have not set forth in their petition or in their brief filed in this court any such other statute or statutes which they contend the defendants have violated or are about to violate unless they are restrained from so doing. We find no basis in the petition for the contention that the alleged action on the part of the defendants constitutes a violation of section 5 of article 12 of the constitution of Kansas.

The petition concludes by asserting that the action on the part of the defendants constitutes a clear abuse of discretion and an exercise of bad faith. At best, the allegation is only a conclusion which must be predicated upon definite acts or omissions alleged in the petition. The petition contains not a single allegation of an act or of an omission to act which alone would justify a court in issuing an injunction to prevent the defendants from performing their administrative duties; neither would all of the allegations of the petition when

combined entitle a court to conclude that the defendants are acting in bad faith or that they are arbitrarily abusing their discretion. There being no foundation alleged for the conclusion, the baseless conclusion alone does not constitute an allegation of a cause of action. There is ever a legal presumption "that public officers do their duty, that they act fairly, from good motives, and with the purpose and intention of obeying the law. Suspicion, surmise, insinuation and innuendo are not enough to overthrow this presumption." (*Ray v. Miller*, 78 Kan. 843, 98 Pac. 239.)

Counsel for the plaintiffs vigorously contend that the petition sets forth sufficient facts to justify the issuance of a permanent injunction because of alleged inequitable conduct and alleged waste of public funds. In support of the contention such counsel have cited statements from textbooks and many cases from other jurisdictions pertaining to the abuse of power by municipal authorities, fraudulent and *ultra vires* acts and unjust discrimination on the part of municipal officers. Time and space will not permit us to review the authorities cited and distinguish them from the present case. The court is unanimously of the opinion that the allegations of the petition are insufficient for the purpose of asserting that the defendants have abused their power, acted fraudulently, or that their acts have been *ultra vires*. Likewise, the court is of the opinion that the allegations of the petition do not justify a court in assuming that the defendants ultimately will waste the public funds which may be derived from the sale of the bonds. Also, as before stated, we are unable to find in the allegations any facts which would permit a court to conclude that the defendants have exercised any unjust discrimination, or necessarily will do so. The allegations disclose only that the defendants are attempting to proceed in compliance with the mandate of the majority of the electors and in substantial compliance with all statutory safeguards. If the statutes do not afford the plaintiffs adequate protection, the remedy ordinarily is a problem for the legislature and the instant case does not present an exception. The defendants simply are subject to the old rule that the will of the majority controls within the limitations prescribed by the legislature. It follows that the demurrer to the amended petition for the permanent injunction was properly sustained unless the alleged failure on the part of the defendants to pass the proposed ordinance in compliance with the initiatory petition or submit such ordinance to a vote constituted such a violation of statutory regulation as would

justify the issuance of the permanent injunction. Consideration of such question follows.

2. The petition in the mandamus action, after asserting the same preliminary matters as are set forth in the injunction action, alleges that the election was held for the purpose of issuing general obligation bonds in furtherance of the construction of a waterworks system, in the amount of $115,000, and that as a result of the election the defendants as a governing and canvassing board of the city declared that the propositions submitted to the electors had carried by more than a majority of the votes cast. The petition also alleges that prior to the election no detailed plans and specifications had been made for the contemplated waterworks system and that no definite cost of the same had been ascertained, but that after the purported election detailed plans and specifications had been compiled and were available to the electors, and further that such plans and specifications disclosed that the proposed waterworks system, if constructed, would be wholly inadequate for the purpose of supplying the city and its inhabitants with water for all purposes. In the petition it is alleged that the proposed plans and specifications disclosed that no more than 42 percent of the area of the city would be served by the proposed system and that the waterworks system would serve less than 40 percent of the total value of the property contained in the city area; that such property would be subject to pro rata taxation for the cost of the proposed waterworks system upon the basis of the assessed valuation. It is specifically alleged in the petition that a greater proportion of the area and the property subject to assessed valuation would be wholly unserviced by the proposed waterworks system and, therefore, dependent upon some other water supply for fire protection and other purposes. The petition also alleges that on June 13, 1946, which was ten days after the election was held, there was filed with the city clerk for submission to the defendants, who are the mayor and the members of the council of the city of South Hutchinson and who are also sued individually, a petition signed by electors of the city equal in number to more than 80 percent of the entire vote cast for all candidates for mayor and council in the last preceding municipal general election; that said initiatory petition referred to a proposed ordinance, which ordinance pertained to and governed the issuance of the bonds which were about to be sold and which ordinance also pertained to and governed the plan and policy of the city in the construction of a

waterworks system and provided, in substance, that the intended bond indebtedness should not be incurred until and unless the authorities of the city could be assured that an adequate waterworks and fire protection system could be obtained within the amount of the proposed issue of bonds. The petition also alleges that the ordinance would prohibit the construction of a waterworks system until such time as the city authorities could be assured that such a system might proceed to completion without interruption due to lack of materials. A copy of the proposed ordinance is marked Exhibit "A" and made a part of the petition. The petition further alleges that the city clerk has found such petition to be sufficient and has issued a certificate of sufficiency and that compliance has been made with all statutory and other legal requirements but that notwithstanding such facts and circumstances and though more than twenty days have expired since the submission of the initiatory petition the defendants have taken no action for the adoption of the proposed ordinance or for the calling of an election to submit such ordinance to the electors for adoption or rejection, and that the defendants refuse and continue to refuse to take any action in regard thereto. The petition also alleges that since the submission of the initiatory petition, the defendants as the governing body of the city have entered into a purported contract for the construction of an inadequate system of waterworks conditioned upon the result of certain litigation then pending and that the defendants will make no effort to comply with the initiatory petition unless compelled to do so by the issuance of a writ of mandamus. The petition concludes by alleging that the plaintiffs have no adequate remedy at law and are entitled to a writ of mandamus directing the defendants either to adopt the proposed ordinance without change, or to submit the same to the electors of the city for adoption or rejection. The initiatory petition and the proposed ordinance read as follows:

"We, the undersigned, legally qualified voters and electors of the City of South Hutchinson, Kansas, do respectfully request that the following Ordinance be passed by you as the governing body of such City, without alteration, or submitted without alteration by such governing body to a vote of the electors of said City as and within the time provided by law, for adoption or rejection, said Ordinance being in words and figures as follows, to-wit:

ORDINANCE No. ....

"AN ORDINANCE GOVERNING THE ISSUANCE OF BONDS OF THE CITY OF SOUTH HUTCHINSON, KANSAS, FOR THE PURPOSE OF CONSTRUCTING AND COMPLETING A WATERWORKS SYSTEM FOR SAID CITY.

"WHEREAS, questions have been raised as to whether an adequate Water-

works System can be constructed and completed under present conditions, for the amount of the proceeds from the sale of bonds of the City of South Hutchinson in the principal sum of $115,000.00.

"Now Therefore,

"Be It Ordained by the Mayor and Council of the City of South Hutchinson, Kansas;

"Section 1. That no bonds of the City of South Hutchinson, Kansas, shall be registered with the Auditor of State or sold or delivered or otherwise caused to become a valid obligation of said City until and unless (a) complete plans and specifications for a waterworks and fire protection system adequate to properly serve said City, the inhabitants and property owners thereof, be had, obtained and made available to the public and a contract let for the construction and completion of such system for not to exceed the amount of the proceeds obtainable from the sale of bonds of the City of South Hutchinson, Kansas, in the principal sum of $115,000.00; and (b) materials are available on the market so as to enable such construction to commence within not more than sixty days after such contract is let, and to proceed to completion thereafter without interruption due to lack of materials . . ."

Observation should be made that the allegations of the petition in the mandamus action set forth no facts other than those which have been considered in connection with the action for the injunction except in regard to the initiatory petition for the proposed ordinance and that the defendants actually have entered into a purported contract for the construction of an inadequate waterworks system conditioned upon the result of certain litigation. The allegation that the defendants have entered into such a contract rather than that they are about to enter into the same adds no new element which would necessitate a ruling contrary to that made by the trial court in sustaining the demurrer to the petition for an injunction. In asserting that the contract entered into is inadequate, the plaintiffs are merely again seeking to induce the trial court to substitute its judgment for the judgment of the administrative officials. Therefore, our reasons for affirming the trial court's ruling in the injunction action apply also to the petition for the writ of mandamus with the result that we are required to consider only the legal effect of the initiatory petition requesting the passage of the proposed ordinance. Such an initiatory petition was filed pursuant to the authority of G. S. 1935, 12-107. The statute is too long to be reprinted herein. It provides, in substance, that if a petition signed by 40 percent of the electors in a city of the third class who cast votes for all candidates for the office of mayor or commissioner at the last preceding general municipal election, shall be filed with the city clerk, that such a petition may request a

proposed ordinance be passed by the governing body of the city without alteration, within twenty days after the attachment of the clerk's certificate accompanying the petition, and if not so passed the governing body shall call a special election for the purpose of submitting the proposed ordinance, without alteration, to a vote of the electors of the city.

In construing the above-referred-to statute, this court has held that a distinction always is to be made between proposed legislative and administrative ordinances. From the case of *State, ex rel., v. Jacobs*, 135 Kan. 513, 11 P. 2d 739, the following is quoted: ·

"A clear distinction was made in the case of *State, ex rel., v. City of Kingman*, 123 Kan. 207, 255 Pac. 645, between legislative and administrative ordinances. In that case it was held, after a resolution, instead of an ordinance, had been adopted and published by the commissioners declaring the improvement of a street to be necessary, that the later ordinance, providing for the details of paving the same, was administrative and not subject to the referendum statute. (See, also, *Palmer v. Munro*, 123 Kan. 387, 255 Pac. 67.) In the case of *State, ex rel., v. Morton*, 128 Kan. 125, 276 Pac. 62, it was held that the cooperation of the city governing body with the federal and state authorities in establishing a connecting road through the city was an administrative detail and not subject to the control of the referendum statute relating to legislation by ordinance." (p. 516.)

If the ordinance proposed under the authority of G. S. 1935, 12-107, *supra,* is administrative or executive in character as distinguished from legislative, the city officials may ignore the petition and proceed to perform their official duties without being subject to a writ of mandamus compelling them either to pass the ordinance or submit it to the electors for adoption or rejection. (See *State, ex rel., v. Morton*, 128 Kan. 125, 276 Pac. 62.) Consequently, the question before us narrows itself to a determination of whether the proposed ordinance is administrative or legislative in character.

Whether a proposed ordinance is administrative or legislative is frequently a question which is difficult to answer. The courts have not agreed upon a definite rule which tests an ordinance in all circumstances and have at times disagreed as to what tests should be controlling in various circumstances. The question has been before this court in a limited number of cases. While the exact question was not commented upon in the case of *State, ex rel., v. City of Pratt*, 92 Kan. 247, 139 Pac. 1191, the circumstances in the cited case were somewhat analogous to those in the present case. The electors of the city had voted to issue bonds to construct an electric-light plant. Shortly thereafter an initiatory petition, signed by the

required number of qualified voters, was filed, which petition contained a request that an ordinance therewith submitted be passed which entirely repealed the ordinance providing for the execution of the bonds. A writ of mandamus was allowed compelling the board of commissioners either to repeal the ordinance or to submit the ordinance to popular vote. Obviously, the original ordinance authorizing the issuance of a designated amount of bonds to provide funds for the construction and equipment of an electric-light plant was legislative in character. Consequently, the proposed repealing ordinance was also legislative in character. In the instant case the proposed ordinance clearly does not seek to repeal the original ordinance and it follows that the character of the proposed ordinance in the instant case cannot be determined by the suggested test. No definite test for determination of the question was enunciated by the court in the case of *State, ex rel., v. City of Kingman,* 123 Kan. 207, 255 Pac. 645, but the general question was considered and the opinion quoted with approval the following from 7 McQuillin on Municipal Corporations, § 351c:

" 'The referendum is usually held "applicable to all ordinances and resolutions which constitute an exercise of legislative power." That is, it was designed to be directed against "supposed evils of legislation alone." "To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. In many cases it would entirely prevent the exercise of the executive power necessary to carry out the acts determined upon by the legislative department. In the absence of a very clear declaration to the contrary it must be presumed that the power of referendum was intended to apply solely to the legislative powers of the city." An act purely executive in character, unmixed with the exercise of legislative power, is not subject to the referendum.' " (p. 209.)

After citing the text, the opinion continues by stating, "The tendency seems to be to confine the operation of similar referendum statutes *with a considerable degree of strictness to measures which are quite clearly and fully legislative and not principally executive or administrative.*" (Emphasis supplied.)

Another Kansas case dealing with the subject is *State, ex rel., v. Morton,* supra. In the cited case the city governing body agreed to a certain route for a proposed connecting link in the state highway. Thereafter dissatisfied residents petitioned the governing body to enact or submit to a vote a formulative ordinance disapproving a portion of the selected route and substituting a different route for that portion. It was held that the location of the route of a highway was

essentially an engineering detail in connection with the execution of a highway project and that in locating the route the governing body of the city was acting in an administrative capacity. Since the governing body was acting in such a capacity, it was held not subject to a writ of mandamus compelling it to exercise its authority in a different manner. The case is significant in that it holds that the locating of a route of a highway is essentially an engineering detail which is administrative in character. In the instant case the plaintiffs seek to effect the location, or at least to determine the extent, of the proposed water system. The last-cited case was followed by *State, ex rel., v. Jacobs,* supra. In the cited case the original proposed ordinance pertained to the widening of an avenue and the payment of the cost thereof. Consequently, the original ordinance clearly was legislative in character. A referendum petition was filed with the city clerk seeking to compel the city commissioners either to repeal the original ordinance or submit the matter to a vote of the electors. Thus, it will be seen that in the cited case we again have an instance wherein it is sought to repeal a legislative ordinance and that consequently, the repealing ordinance was also legislative in character. No definite test, however, was declared in the cited case as to when an ordinance is administrative or legislative.

The last Kansas case which has been cited touching upon the question is that of *State, ex rel., v. Charles,* 136 Kan. 875, 18 P. 2d 149. The plaintiffs insist that the application of the principles set forth in the cited case definitely establish that the ordinance under consideration is legislative in character. In such case the town of Hugoton had voted bonds for the building and equipment of a municipal gas plant and after the construction contract therefor had been let an initiatory petition was submitted to the governing body requesting that all such proceedings be cancelled and that a franchise be given to a private utility for the purpose of supplying gas to the city of Hugoton. The syllabus and the opinion clearly develop that the initiatory petition filed in the cited case requested the officers of the city to call an election for the purpose of *repealing* the original ordinance and to annul the entire proceedings occurring subsequent to its passage. Not only did the initiatory petition seek to repeal the original ordinance but it sought to clothe the municipal officers with authority to enter into a contract with the pipeline company for the purpose of serving the city with gas. In such circumstances, there could have been no question, under our decisions, but that the original ordinance and the proposed repealing

ordinance were legislative in character. In the opinion, however, it was said:

"Here the question involved is plainly a matter of public policy. It is, Shall the city build and equip a municipal gas plant to be paid for by the issue of bonds by the city, or obtain gas under a contract from a private party? The project is one in which the public is vitally interested, and the proposal involves a matter of public policy or the method of financing the securing of gas for the people. The general rule has been stated as follows:

" 'Acts constituting a declaration of public purpose and making provisions for ways and means of its accomplishment may be generally classified as calling for the exercise of legislative power.' (43 C. J. 585.) [Citation of cases.]

"The proposition we have here is distinctly and mainly legislative in character and, we think, a proper one for referendum. It is a subject of general and permanent character and the accomplishment of a public purpose." (p. 877.)

Counsel for the plaintiffs stress the part of the opinion relative to a declaration of a public purpose and the making of provisions for ways and means of its accomplishment as being determinative of when an ordinance is legislative in character. In considering the contention, we note first that the proposed ordinance in the instant case does not repeal the original ordinance. The next question is whether it declares a public purpose which was contrary to or conflicted with the original purpose, as was true in the cited case. According to the allegations of the petition the original ordinance set forth the purpose of issuing general obligation bonds in the principal sum of $115,000 as being for the construction of a waterworks system. The ballots and other proceedings pursuant to the election specified that the bonds would be used "for the purpose of supplying the city of South Hutchinson and its inhabitants with water for all purposes." Therefore, it must follow that the original ordinance stated the public purpose or policy. The proposed ordinance does not depart from the public purpose specified in the original ordinance. Neither does the proposed ordinance seek to change or alter the ways and means of accomplishing the public purpose. The proposed ordinance does not suggest any other method of acquiring the waterworks system nor does it suggest a change in the amount of the bonds to be issued. It only specifies that the bonds shall not be made valid obligations of the city until (a) complete plans and specifications for an adequate system have been obtained and made available to the public and a contract let for the construction and completion of the system; (b) materials are available on the market so that construction can commence within not more than sixty days and can proceed to completion without interruption. Obviously, sec-

tions (a) and (b) are administrative or executive in character; they concern engineering details and suggestions for managerial policy. The suggestions are not general and permanent in character but are to apply only in connection with the issuance of certain bonds and the construction of a particular public improvement. Consequently, the court is of the opinion that the application of the tests referred to in the case of *State, ex rel., v. Charles,* supra, does not result in a determination that the proposed ordinance was legislative.

Counsel for the plaintiffs call our attention to certain cases from other states and particularly request that we consider the opinion in the case of *Keigley v. Bench,* 97 Utah 69, 89 P. 2d 480, also reported in 122 A. L. R. 756, with annotations beginning at page 769. In addition to observing the tests hereinbefore considered, the cited opinion quotes, with approval, the following from the case of *Whitbeck v. Funk,* 140 Ore. 70, 12 P. 2d 1020:

" 'The crucial test for determining what is legislative and what is administrative is whether the ordinance is one making a new law, or one executing a law already in existence.' "

In applying such test to the instant case we have no difficulty in concluding that the proposed ordinance only provided for the execution of an ordinance already in existence and, consequently, was administrative in character. In the cited case a proposed ordinance sought to change an original ordinance in many respects and in particular it sought to vary the terms of the original ordinance by providing that the bonds should continue as an obligation upon the city for a period of twenty years rather than fifteen years as was provided in the original ordinance. It was held that such a material departure from the original ordinance was such as to constitute a change of policy and that it was not within the evident intent of the voters and that, therefore, the ordinance in such particular was legislative in character. We have no such question before us in the instant case and the decision in the cited case in all other respects is in harmony with the conclusion we have reached. The cases which are annotated in A. L. R. following the cited case clearly support the conclusion we have reached that the proposed ordinance was administrative in character. (See, also, the later cases of *Read v. City of Scottsbluff,* 139 Neb. 418, 297 N. W. 669; *State, ex rel., Nelson, v. Butler,* 145 Neb. 638, 17 N. W. 2d 683, and *Seaton, Mayor, v. Lackey,* 298 Ky. 188, 182 S. W. 2d 336.)

The rulings of the district court sustaining the demurrer to the amended petition for an injunction and in sustaining the motion to quash the alternative writ in the mandamus action are affirmed.